## Selection of Presiding Judges

JOSEPH L. DONNELLY, Special Counsel, and THOMAS D. MCBRIDE, Attorney General, August 4, 1958.—Your office has asked us to set forth the rules to be applied by your department in determining who shall be commissioned as the presiding judge of a court of the Commonwealth comprising more than one judge when a vacancy occurs.

The questions raised by this inquiry, by and large, are common to all judges of courts of record within the Commonwealth. Excluding the minor judiciary, the Pennsylvania judicial system encompasses seven classes of judges, namely, the judges of the Supreme Court, the Superior Court, the courts of common pleas, the orphans' courts, the County Court of Allegheny County, the Municipal Court of Philadelphia and the Juvenile Court of Allegheny County. For purposes of clarity and analysis we shall treat each class of judges separately in this opinion.

We understand that, on the basis of Commonwealth ex rel. Reeder v. Pattison, 109 Pa. 165 (1885), it has been the practice of your department to commission as president judge of a court the judge oldest in the point of continuous service on that court regardless of whether his service commenced as a result of appointment followed by election or of election only. We

would naturally be reluctant to overturn this long-standing administrative practice unless that action is clearly required. However, a recent per curiam order of our Supreme Court casts new light on the nature of appointed judicial tenure and emphasizes the necessity of an intensive reëxamination of present administrative practices. See In re Determination of the President Judge for the 35th Judicial District, no. 2055, miscellaneous docket, western district. Accordingly, in considering the request for advice, we have most carefully reviewed the pertinent provisions of our Constitution and its schedules together with relevant statutory and recent decisional law.

At the outset, it is well to note certain provisions of our Constitution which relate to all judges of courts of record within the Commonwealth. The Constitution requires that all judges of courts of record shall be elected by the people.[1] Judges of the Supreme Court are elected for terms of 21 years and are ineligible for reëlection;[2] all other judges required to be learned in law are elected for terms of 10 years and are eligible for reëlection.[3] When, because of "death, resignation or otherwise", a judge does not complete his full elected term, the Governor is authorized to fill the vacancy by appointment.[4] Such appointments by the Governor, however, are not for the unexpired portion of the elected term; these are interim appointments continuing only until such time as a successor, chosen by the electors, is ready to take office, that is, until the first Monday of January next succeeding the first ensuing general or municipal election appropriate to the judi-

---

[1] Pennsylvania Constitution, art. V, secs. 2, 15.

[2] Id., art. V, sec. 2.

[3] Id., art. V, sec. 15.

[4] Id., art. V, sec. 25. See, also, id., art. IV, sec. 8, and Buckley v. Holmes, 259 Pa. 176, 102 Atl. 497 (1917).

cial office.[5] Judges chosen by the people to fill vacancies caused by "death, resignation or otherwise", after election, commence full terms of 21 or 10 years, as the case may be.

I. Article V, sec. 2, of the Pennsylvania Constitution, which ordains that the Supreme Court shall consist of seven judges elected for terms of 21 years and ineligible for reëlection, also provides, with respect to the office of chief justice, that: "The judge whose commission shall first expire shall be chief justice, and thereafter each judge whose commission shall first expire shall in turn be chief justice."

If not more than one judge was elected to the Supreme Court in any one year, there would be no difficulty at all in determining the succession to the office of chief justice. When that office became vacant, the commission of one of the judges would necessarily expire before that of any of his colleagues, and that judge would become chief justice. This is only another way of saying that when the office of chief justice is vacant, the judge of the court who has served more of his elected term than any other judge, and is, therefore, more experienced in the work of the court than any of his colleagues, will become chief justice.

This result is not significantly affected even if two or more judges ascend to the bench at the same time as the result of simultaneous election.[6] Article V,

---

[5] Pennsylvania Constitution, art. V, sec. 25. Judges of the Supreme and Superior Courts may be elected at either a general or a municipal election; other judges learned in the law may be elected only at municipal elections: Id., art. VIII, sec. 3. General elections are held in November of each even-numbered year and municipal elections in November of each odd-numbered year: Id., art. VIII, sec. 2.

[6] Article V, sec. 16, of the Constitution provides that: "Whenever two judges of the Supreme Court are to be chosen for the same term of service each voter shall vote for one only, and when three are

sec. 17, of the Constitution provides that: "Should any two or more judges of the Supreme Court . . . be elected at the same time, they shall, as soon after election as convenient, cast lots for priority of commission, and certify the result to the Governor, who shall issue their commissions in accordance therewith."

As a result of the casting of lots and the issuance of commissions in accordance therewith, the relative seniority of the newly elected judges is effectively established and no difficulties can thereafter ensue in determining succession to the office of chief justice.

All of the foregoing discussion proceeded on the assumption that every judge of the Supreme Court commences his term of service as the result of election only. However, not all judges complete their full terms of office; and in the case of vacancies happening by reason of "death, resignation or otherwise", the Governor is empowered to make interim appointments. What, then, are the effects, if any, of appointed service followed by election?

Obviously, if the Governor appoints a judge who is subsequently elected for a full term and no other judge is elected to the court at the same election, the nature of appointed tenure is immaterial because, whether the judge's seniority is computed from the date of his appointed commission or his elected commission, his place in the order of succession will not be affected. If, however, an appointed judge stands for election at the same time that another judge is to be selected by the people, the nature of appointed tenure becomes significant. Do judges who have served by appointment, for

to be chosen he shall vote for no more than two; candidates highest in vote shall be declared elected." In its practical application, this section insures that whenever two vacancies on the Supreme Court are to be filled at the same election one judge shall be chosen from each of our major political parties. Elections of this sort have occurred not infrequently, e.g., in 1956, 1951, 1935 and in other years.

however short a period, take seniority automatically over a judge elected at the same election and who commences his elected term at the same time as the appointed judges begin their elected terms? The answer to this question must be in the negative.

Article V, sec. 17, of the Constitution, quoted at length, supra, requires that when any two or more judges of the Supreme Court are "elected at the same time, they shall . . . cast lots for priority of commission." The mandate of this section is clear and unambiguous; it is an absolute command which contains no exception for judges previously serving by appointment. The Constitution uses the words "elected" and "reëlected" with precision. Thus, since a judge of the Supreme Court may never be "reëlected", a direction that two judges "elected" at the same time "shall" cast lots could not be more specific.

That the foregoing is the only proper interpretation of the provisions of article V, sec. 17, of the Constitution is attested to by the actual practice of the members of the Supreme Court. Judge Alex Simpson, Jr., of the Supreme Court, died on July 24, 1935, and Hon. H. Edgar Barnes, then Secretary of Revenue of the Commonwealth, was appointed to the court by the Governor, effective August 12, 1935.[7] The term of Chief Justice Robert S. Frazer was to expire on January 6, 1936. At the September primary of 1935, Judge Barnes received the Democratic Party nomination and Hon. Horace Stern, President Judge of the Court of Common Pleas No. 2 of Philadelphia County, received the Republican Party nomination for judge of the Supreme Court, and both were elected to the court at the municipal election of 1935.[8] Both judges commenced their

---

[7] See 319. Pa. iii (1935).

[8] See Pennsylvania Constitution, art. V, sec. 16.

service under their elected terms on January 6, 1936, *Judge Barnes having already served more than four months on the court by appointment.*[9] However, prior to taking their oaths of office, the two cast lots to determine priority of commission, and Judge (later to be Chief Justice) Stern prevailed. That these judges cast lots to determine priority of commission appears of record in the files of the Bureau of Commissions and Elections of your department.

The framers of our Constitution, by the use of the phrase the "judge whose commission shall first expire", intended that the judge of the Supreme Court with the longest elected service on that bench should succeed to the office of chief justice whenever that office should become vacant. If, however, appointed judges possessed precisely the same tenure status as elected judges, the constitutionally ordained plan of succession would be reduced to an absurdity. For example, suppose that in 1935 Chief Justice Frazer resigned his commission prior to the expiration of his elected term but after August 12th of that year. Judge Barnes, having been appointed to the bench on August 12, 1935, under a commission expiring on January 6, 1936, would be the judge of the Supreme Court whose commission would first expire. Applying the mandate of article V, sec. 2, literally to an appointed judge would have resulted in the elevation of Judge Barnes to the office of chief justice despite the fact that he had less experience on the court than any of its other members. Such an anomalous result is neither desirable nor intended by the framers of our Constitution.

We are of the opinion, therefore, that the order of succession to the office of Chief Justice of the Supreme Court is determined on the basis of priority of *elected* commission, resolving simultaneous elections by the

---

[9] See 320 Pa. iii (1936).

casting of lots and disregarding entirely any appointed service.

II. The Superior Court of Pennsylvania owes its existence not directly to our Constitution, as is the case with the Supreme Court, but to the statutes of the Commonwealth. Nevertheless, the provisions of article V, sec. 15, requiring that all judges learned in the law shall be elected by the people for terms of 10 years, and article V, sec. 25, authorizing the Governor to fill vacancies in courts of record,[10] of the Constitution apply with equal force to statutory courts, such as the Superior Court, and constitutional courts, such as the courts of common pleas.

The Superior Court was created by section 1 of the Act of June 24, 1895, P. L. 212, 17 PS §111, and consists of seven judges, learned in the law, elected for terms of 10 years and eligible for reëlection. The first seven judges of the court were appointed by the Governor in 1895 to serve until the first Monday of January, 1896,[11] and seven judges of the court were elected for full terms at the municipal election of 1895.[12]

With respect to the office of president judge, section 2[13] of the act creating the Superior Court provides: "The rank, title, and position of the president judge of the said Superior Court shall be held by that *elected* member of the court whose commission shall have priority either in time or as the result of the lot." (Italics supplied.)

Section 2 of the act also prescribed the method for the selection of the first elected president judge of the court as well as the establishment of the seniority of

---

[10] See, also, section 1 of the Act of June 24, 1895, P. L. 212, 17 PS §115, and Pennsylvania Constitution, art. IV, sec. 8.

[11] See section 1 of the Act of June 24, 1895, P. L. 212, 17 PS §111.

[12] See section 1 id., 17 PS §112.

[13] As amended by section 1 of the Act of May 6, 1915, P. L. 263, 17 PS §117.

the judges thereafter by providing: "As soon as convenient after the first election [viz., the municipal election of 1895], the successful candidates shall cast lots for priority of commission and certify the result to the Governor, who shall issue their commissions in accordance therewith, and the same course shall be pursued whenever thereafter two or more judges are elected at the same time . . ."[14]

Thus, the order of succession statutorily established for the office of President Judge of the Superior Court is precisely that order of succession constitutionally established for the office of Chief Justice of the Supreme Court.

The President Judge of the Superior Court is to be that judge whose elected commission is prior in time to that of any of his colleagues. Once the initial organization of the court was accomplished, the judge whose commission was prior in time almost inevitably has served on the court for a longer period of time than any of his colleagues and would, therefore, be more experienced in the work of the court and better able to handle the administrative problems devolving upon him as the court's presiding officer. When two or more judges of the court are elected at the same time, they are required by section 2 of the act to cast lots to establish relative priority between them. Section 2 of the act mandates the casting of lots when two or more judges are elected at the same time even when one or more of the judges so elected has previously served on the court by appointment.

This conclusion is supported by the reasons we have given in reaching a similar conclusion in connection with judges of the Supreme Court and, additionally, by the provisions of the Act of 1895, supra. The first

---

[14] As amended by section 1 of the Act of May 6, 1915, P. L. 263, 17 PS §116.

above quoted portion of section 2 of the act provides that the office of president judge shall be held "by that *elected* member of the court whose commission shall have priority in time . . ." (Italics supplied). Similarly, the second above quoted portion of section 2 of the act requires that after the first election of judges the successful candidates should "cast lots for priority of commission . . . and the same course shall be pursued *whenever thereafter* two or more judges are *elected* at the same time . . ." (Italics supplied). This language does not admit of exceptions for judges previously serving on the court by appointment.

When the legislature employed the term "elected" in the Act of 1895, it did so with care and intended to include within that term any judge elected to the court for the first time whether or not he had previously served by appointment. This is evidenced by the additional language contained in section 2 of the act permitting a judge to cumulate his service on the court if he is successively elected. Section 2 [15] of the act provides that a judge ". . . who is *re-elected* shall not cast lots for priority of commission, but the rank, priority, and seniority of each judge of said court shall be determined by his *continuous* length of service as a member of said court." (Italics supplied.)

Again, section 2 [16] provides that ". . . if the [first] president judge shall be *re-elected*, or if any succeeding president judge shall be *re-elected*, he shall continue to hold the rank, and position [of president judge]." (Italics supplied.)

Accordingly, in determining the seniority and succession of judges of the Superior Court to the office of president judge, appointed service is not to be computed.

---

[15] 17 PS §116.

[16] 17 PS §117.

III. The several courts of common pleas, like our Supreme Court, owe their existence directly to the Constitution. See article V, secs. 1, 4-6. Article V, sec. 6, as amended on November 7, 1911, specifically provides for the courts of common pleas of Philadelphia and Allegheny Counties, and article V, secs. 4, 5, provide for the division of the Commonwealth into judicial districts. Judges of the several courts of common pleas are elected for terms of 10 years and are eligible for re-election.

In all counties of the Commonwealth the judges of the courts of common pleas serve additionally as the judges of the courts of oyer and terminer and general jail delivery and the courts of quarter sessions of the peace. Because our trial courts of general criminal jurisdiction are not staffed by a separate judiciary, it is necessary for us to consider only the order of succession to the office of president judge of a court of common pleas.

The body of the Pennsylvania Constitution, as adopted in 1873, made no provision for determining the order of succession to the office of president judge of a court of common pleas. In fact, the office of president judge, as such, was not even recognized in the judiciary article of the Constitution. "The omission to provide, in the judiciary article, for succession to the president judgeship is significant and even suggestive of a purpose to change the previously existing system, in that respect, and make provision therefor elsewhere in the Constitution": Commonwealth ex rel. Reeder v. Pattison, supra, at page 170. This provision was made in schedule no. 1, adopted with the Constitution.[17]

---

[17] The provisions of schedule no. 1 relating to the office of president judge constitute a permanent rule for determining the order of succession to that office: Commonwealth ex rel. Reeder v. Pattison, supra.

Section 15 of schedule no. 1, the exact language of which is set forth in the margin,[18] specifically preserved the status of judges learned in the law of any court of record holding commissions in force at the time of the adoption of the Constitution. Section 16 of schedule no. 1 provided for the succession to the office of president judge in all judicial districts except those comprising Philadelphia [19] and Allegheny [20] Counties, as to which special provision was made. The pertinent language of this section is as follows:

"After the expiration of the term of any president judge of any court of common pleas, in commission at the adoption of this Constitution, the judge of such court learned in the law and oldest in commission shall be the president judge thereof. . . ."

The president judge of these judicial districts is to be the judge oldest in commission.

Separate provisions, producing, however, precisely the same order of succession to the office of president judge as the general succession provision of section 16 of schedule no. 1, were made for the common pleas courts of Philadelphia and Allegheny Counties. Section 18 of schedule no. 1 provided for the first organization of the several courts of common pleas of Philadelphia County by identifying by surname the president judges and additional law judges thereof. Section 18 then goes on to state that "thereafter the president judge [of each court] shall be the judge oldest in commission."

Similarly, after providing for the first organization of the then separate courts of common pleas of Alle-

---

[18] "Judges learned in the law of any court of record holding commissions in force at the adoption of this Constitution shall hold their respective offices until the expiration of the terms for which they were commissioned, and until their successors shall be duly qualified."

[19] See section 18 of schedule no. 1.

[20] See section 19 of schedule no. 1.

gheny County, section 19 of schedule no. 1 prescribed the identical rule of succession to the office of president judge of those courts as section 18 did for Philadelphia County and section 16 did for the other judicial districts of the Commonwealth, viz., "thereafter the judge oldest in commission shall be president judge". Subsequently, by an amendment to article V, sec. 6, of the Constitution, adopted November 7, 1911, the several courts of common pleas of Allegheny County were merged into one court, the president judge of that court to be "selected as provided by law". However, as will be hereinafter demonstrated, this amendment did not alter the basic order of succession. The important consideration is that, despite the separate provisions of schedule no. 1 with respect to the office of president judge, the same rule of succession applies to the office in every judicial district. That rule is that the judge oldest in commission shall be president judge.

The harmony of the foregoing provisions is emphasized by the related provisions of the Constitution and schedule no. 1 with respect to the casting of lots to determine priority of commission between two or more judges of the same judicial district elected at the same time. Thus, article V, sec. 17, of the Constitution provides:

"Should . . . any two or more judges of the court of common pleas for the same district, be elected at the same time, they shall, as soon after the election as convenient, cast lots for priority of commission, and certify the result to the Governor, who shall issue their commissions in accordance therewith."

An analogous provision relating to the casting of lots is found in section 16 of schedule no. 1.[21] The effect

---

[21] ". . . [W]hen two or more judges are elected at the same time in any judicial district they shall decide by lot which shall be president judge; . . ."

of the provisions of article V, sec. 17, of the Constitution on appointed service of judges has already been discussed in connection with judges of the Supreme Court and, of course, the same policy considerations apply in both instances.

Moreover, here, as in the case of the Supreme and Superior Courts, the term "elected" must be taken to include judges who are elected after having served by appointment. The terms "elected" and reëlected" are not convertible. This is demonstrated by reference to the provisions of schedule no. 1 permitting judges of the courts of common pleas to cumulate their successive terms of office in computing their seniority. Thus, section 18 of schedule no. 1, with specific reference to the courts of common pleas of Philadelphia County, states:

". . . [A]ny president judge re-elected in the same court or district, shall continue to be president judge thereof."

An identical provision is contained in section 19 of schedule no. 1 for the then (1874) courts of common pleas of Allegheny County, and section 16 of schedule no. 1, applicable to all other judicial districts provides: ". . . [W]hen a president judge of a court shall be re-elected he shall continue to be president judge of that court."

In Commonwealth ex rel. Reeder v. Pattison, supra, the Supreme Court carefully considered all relevant provisions of the Constitution and its schedule and, in an opinion written by Judge Sterrett, summarized its conclusion as follows, at page 171:

"President judges in commission at the adoption of this Constitution shall hold their respective offices until the expiration of the terms for which they were commissioned, and thereafter the judge, of each court respectively, learned in the law and oldest in commission, shall be the president judge thereof."

The opinion of the court also stated, pages 170-71:

"The most prominent feature of the system is that the judge senior in continuous service in each of said courts shall be the president thereof. In 1877, upon the resignation of the president judge of the Court of Common Pleas Number One of the Fifth District, the question arose, which of the remaining judges should be commissioned to fill the vacancy. The judge holding the more recently dated commission had been longer in continuous service than the other, and the Governor, being advised by the then Attorney General that the phrase 'oldest in commission,' meant 'oldest in continuous service,' without regard to the date of the commission under which he was then serving, issued the commission accordingly. So far as we know, this construction, as to the correctness of which we entertain no doubt, has ever since been adhered to by the executive department."

Section 14 of schedule no. 1 requires the General Assembly to designate the several judicial districts of the Commonwealth after each decennial census.[22] The most recent designation of judicial districts by the General Assembly is contained in the Act of January 8, 1952, P. L. 1844, 17 PS §784. Section 4 of the act, with respect to the office of president judge, provides:

"In all districts in which, by the provisions of this act, two or more judges are provided, one of said judges shall be the president judge of said district, and the other or others shall be the additional law judge or judges thereof. The judge of said districts *whose commission shall first expire* shall be the president judge thereof, except when the president judge has been or shall be reelected, in which case he shall continue to be president judge." (Italics supplied.) [23]

---

[22] See, also, the provisions of section 13 of schedule no. 1.

[23] 17 PS §787. Identical provisions are found in prior designation acts. See, e.g., section 2 of the Act of May 10, 1921, P. L. 423.

It is immediately apparent that schedule no. 1 and the designation act employ different methods for determining succession to the office of president judge. The former uses the expression "oldest in commission" and the latter the expression "whose commission shall first expire". If the expression "whose commission shall first expire" in the designation act were intended to produce a result contrary to that mandated by schedule no. 1, the statutory provision would necessarily fail by reason of the superior force of schedule no. 1. See 1925-1926 Op. Atty. Gen. 229. Upon analysis, however, it will be seen that, despite the contrariety of expression, both methods produce precisely the same result.

As pointed out in the Pattison case, "oldest in commission" means "oldest in continuous service". This is because of the uniform practice of permitting judges successively elected to tack their elected terms in determining seniority. We have seen that the judge "whose commission shall first expire" will ordinarily be that judge whose elected experience on a particular court exceeds that of any of his colleagues. The significant difference, for our purposes, between judges of the courts of common pleas and of the Supreme Court is that the latter may not be reëlected so that, in applying the test "whose commission shall first expire" to judges of the Supreme Court, it is unnecessary to consider the effect of aggregate service obtained as a result of successive terms. Thus, the expression "whose commission shall first expire", as used in the designation act, must be read in the light of the aggregation of services permitted the judges of the courts of common pleas. When read in this way, not only is the essential validity of the designation act preserved, but the order of succession required by the expression "oldest in commission" is made identical with that produced by the expression "whose commission shall first

expire". Accordingly, the amendment to article V, sec. 6, of the Constitution adopted November 7, 1911, providing that the President Judge of the Court of Common Pleas of Allegheny County shall be "selected as provided by law" (viz., the designation act), results in the establishment of the same order of succession to the office of president judge of that court as is mandated for the other courts of common pleas of the Commonwealth.

Until 1953 the Court of Common Pleas for the thirty-fifth judicial district had but one judge who was necessarily the president judge of that judicial district. In 1953 the incumbent died, and before the Governor filled the vacancy the legislature created an additional judgeship for Mercer County. On December 31, 1953, the Governor appointed Herman M. Rodgers as president judge and, on the same day, appointed Leo H. McKay as additional law judge. Both Judges Rodgers and McKay served in their designated capacities and were elected for full terms of 10 years at the November 1955 municipal election. After the election, Judge McKay contended that the two should cast lots to determine who would thereafter serve as president judge. The two judges joined in petitioning the Supreme Court to resolve the question and, thereafter, the Supreme Court issued the following order:

"And now, to wit, January 4, 1956, the Court having taken original jurisdiction in the above entitled matter, a majority of the Court is of opinion that it is necessary for the petitioners Honorable Herman M. Rodgers and Honorable Leo H. McKay, to cast lots for the office of President Judge of the Court of Common Pleas of the Thirty-Fifth Judicial District of the Commonwealth. Per Curiam" [24]

---

[24] See In re Determination of the President Judge for the 35th Judicial District, no. 2055, miscellaneous docket, western district, Supreme Court of Pennsylvania.

The order of the Supreme Court resolving the Mercer County question was not accompanied by a written opinion. Since Judges Rodgers and McKay were appointed on the same day and elected for the first time at the same election, the order of the Supreme Court may mean that the court was unwilling to split a single day between two judges in order to determine priority of commission between them. But, more importantly, the order necessarily emphasizes the fact that, regardless of the length of appointed service of any judge of a court of common pleas or the number of such appointees, the mandate of article V, sec. 17, requires that upon election for the first time the judges shall cast lots for priority of commission.

As in the case of the Supreme and Superior Courts, we are firmly of the opinion that, in applying the order of succession to the office of president judge of the courts of common pleas, the appointed service of any one or more judges is to be entirely disregarded.

IV. Article V, sec. 1, of the Pennsylvania Constitution recognizes the existence of orphans' courts within the Commonwealth. In many counties of the Commonweatlh there is no separate orphans' court; the judges of the courts of common pleas in those counties serve additionally as orphans' court judges. Article V, sec. 22, of the Constitution requires the General Assembly, in any county where the population exceeds 150,000, and authorizes the General Assembly, in other counties, to establish a separate orphans' court. In most of the counties served by a separate orphans' court, the court comprises only one judge who is necessarily the president judge of that court. However, in Philadelphia and Allegheny Counties, where the separate orphans' courts comprise more than one judge, it is necessary to determine the applicable order of succession to the office of president judge. Section 4 of the

Act of January 8, 1952, P. L. 1844, 17 PS §787, provides as follows:

"In all districts in which, by the provisions of this act, two or more judges are provided, one of said judges shall be the president judge of said district, and the other or others shall be the additional law judge or judges thereof. The judge of said districts whose commission shall first expire shall be the president judge thereof, except when the president judge has been or shall be reelected, in which case he shall continue to be president judge. The said additional law judge or judges shall possess the same qualifications which are required by the Constitution and laws for the president judge of said district, and shall hold his or their office for a like term and by the same tenure, and shall have the same powers, authority and jurisdiction, and shall be subject to the same duties, restrictions and penalties, as the president judge of said district."

The net effect of the foregoing provision is to make the order of succession to the office of president judge of an orphans' court comprising more than one judge exactly that order which is applicable to judges of a court of common pleas. Thus, the conclusions reached herein with respect to the order of succession to the office of president judge of a court of common pleas apply equally to judges of an orphans' court.

V. The County Court of Allegheny County is a purely statutory court created by section 1 of the Act of May 5, 1911, P. L. 198, as amended, 17 PS §621. The court comprises six judges [25] learned in the law elected for terms of 10 years,[26] and eligible for reëlection. The judges of the Court are elected at municipal elec-

---

[25] Section 1 of the Act of May 5, 1911, P. L. 198, as amended by section 1 of the Act of April 1, 1925, P. L. 109, 17 PS §621.

[26] Section 2 of the Act of May 5, 1911, P. L. 198, as amended, 17 PS §622.

tions; vacancies resulting by reasons other than the regular expiration of an elected term are filled by the Governor.[27] The first judges of the court were appointed by the Governor, who was authorized to designate one of the judges as the presiding judge of the court and to designate the priorities of the other commissions.[28] Section 2 of the Act of 1911 provides that:

". . . [U]pon other judges being elected to said court, for the same term, they shall draw lots for priority or expiration of commission, the result of which they shall certify to the Governor; and the judge holding the original commission first expiring shall, at all times thereafter, be commissioned as the presiding judge of said court." [29]

Here, as in the case of judges of the courts of common pleas, judges elected for the same term are required to draw lots for priority of commission. The judge with the commission "first expiring" shall be commissioned as the presiding judge. It follows, therefore, that the order of succession applicable to judges of the County Court of Allegheny County is precisely that order applicable to the several courts of common pleas. Therefore, the conclusion reached herein with respect to the order of succession to the office of president judge of a court of common pleas is equally applicable to judges of the County Court of Allegheny County.

VI. The Municipal Court of Philadelphia was created by section 1 of the Act of July 12, 1913, P. L. 711, as amended by section 1 of the Act of January 14, 1952, P. L. 1861, 17 PS §681, and consists of a president judge and 13 associate judges. The judges of the court are elected for terms of 10 years and are

---

[27] Ibid.

[28] Ibid.

[29] 17 PS §622.

eligible for reëlection.[30] As in the case of other judicial vacancies caused by death or otherwise, the Governor is authorized to make interim appointments.[31] With respect to the office of President Judge of the Municipal Court, section 2 of the Act of 1913, as amended, provides as follows:

"On the first Monday of January, one thousand nine hundred and twenty-four, and every five years thereafter, the judges of said court shall elect one of their number as president judge, who shall hold such office for a term of five years." [32]

The office of President Judge of the Municipal Court of Philadelphia, unlike the corresponding offices of the other courts of the Commonwealth, does not depend in any way upon length of service on the bench; rather, it depends entirely upon election to that office by the members of the court. Because the office of president judge of this court is, by statute, made an office to be filled by an election of the members of the court itself, there is no occasion for us now to examine the relative seniority of the associate judges of that court.

VII. The Juvenile Court of Allegheny County was created by section 201 of the Act of June 3, 1933, P. L. 1449, 11 PS §269-201. Inasmuch as the Juvenile Court consists of only one judge, that judge is necessarily the president judge of that court, and no problems as to seniority or the order of succession to the office of president judge can arise unless and until the General Assembly, at some future date, should see fit to increase the number of judges on that court.

VIII. To summarize: On the basis of the foregoing,

---

[30] Section 2 of the Act of July 12, 1913, P. L. 711, as amended, 62 PS §682.

[31] Ibid.

[32] 17 PS §682. See, also, Commonwealth ex rel. Baldrige v. Glass, 295 Pa. 291, 145 Atl. 278 (1929).

we are of the opinion, and you are accordingly advised that:

1. The Chief Justice of the Supreme Court shall be that judge who has served on the court for the longest period of time under an elected term. When two or more judges of the Supreme Court are elected at the same election, whether or not they have previously served on the court by appointment, they shall cast lots to determine priority of commission and certify the result thereof to the Governor, who shall issue their commissions in accordance therewith.

2. The President Judge of the Superior Court, the courts of common pleas, the orphans' courts and the County Court of Allegheny County shall be the judge oldest in the point of continuous elected service on the particular court. The service of judges of these courts who are reëlected shall be cumulated. When any two or more judges of these courts are elected for the first time at the same time for the same term and the same court, regardless of whether or not they have previously served on the court by appointment, they shall cast lots to determine relative seniority and certify the result to the Governor, who shall issue their commissions in accordance therewith.

3. The President Judge of the Municipal Court of Philadelphia is chosen by election by the members of that court for a term of five years. The result of the election is forwarded to the Governor who issues the commission of the president judge in accordance therewith.

4. There being only one judge of the Juvenile Court of Allegheny County, that judge is automatically the president judge of the court.

5. In computing the continuous service of any judge on any court within the Commonwealth (excepting the Supreme Court and the Municipal Court of Philadelphia), a judge who is reëlected shall be deemed to have

served continuously on the court from the date of his original elected commission; but the service of any judge under an appointed commission shall be disregarded.[33]

---

[33] We note that the conclusions reached herein are to some extent in conflict with the language of Commonwealth ex rel. Reeder v. Pattison, supra. However, this conflict is considerably diminished, if not eliminated, by an analysis of the facts of that case. They involved not a dispute between two judges elected at the same time, one of whom had prior service by appointment, but a dispute between two judges elected at two different times, the junior of whom claimed to have been elected directly to the office of president judge. This contention was rejected. Nothing in that decision and this opinion is in conflict, and the holding of that case continues to represent the law of the Commonwealth concerning the relative seniority of judges elected at different times.