593 A.2d 1267

In re Petition of Hon. Edward J. BLAKE, President Judge of the Philadelphia Court of Common Pleas, Individually, on Behalf of, and with the Board of Judges, consisting of Judges of the Court of Common Pleas of Philadelphia for relief from the Order of the Pennsylvania Supreme Court Dated December 19, 1990 and from actions taken or which may be taken pursuant thereto by Hon. Nicholas P. Papadakos and Hon. Ralph J. Cappy.

Supreme Court of Pennsylvania.

Order May 8, 1991.

Opinion June 27, 1991.

Perry S. Bechtle, Conrad O. Kattner, Sally J. Garber, Labrum & Doak, Philadelphia, Pa., for petitioner.

David Donaldson, Chief of Litigation, Administrative Office of Pennsylvania Courts, Philadelphia, Pa., for respondents.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

458

## ORDER

PER CURIAM:

AND NOW, this 8th day of May, 1991, the petition is denied. Opinions to follow.

## OPINION OF THE COURT

PER CURIAM:

This petition arises in the context of the most recent in a series of efforts to reform the courts of Philadelphia. Due to serious and ongoing fiscal and administrative problems in the Philadelphia courts, and the apparent inability or unwillingness of that system to correct the growing deficiencies, this court designated two of its own members to oversee the Philadelphia court system. By order dated December 19, 1990, we unanimously appointed Mr. Justice Papadakos to oversee the budgetary restructuring and Mr. Justice Cappy to oversee the administrative reformation.

On April 17, 1991, pursuant to the order granting him "full authority to approve, implement and monitor all changes deemed necessary and proper to their budgets and to insure that such changes bring about fiscal responsibility," Mr. Justice Papadakos directed President Judge Blake to terminate the positions of fifty-nine of the sixty-five staff employees attached to his office. Mr. Justice Papadakos took this action after attempts to have President Judge Blake cooperate with him in the restructuring of his office proved to be unsuccessful.

President Judge Blake, together with most of the judges of the court of common pleas of Philadelphia, has petitioned this court to set aside the December 19, 1990 order appointing Messrs. Justice Papadakos and Cappy to oversee the budgetary and administrative structure of the system, and to repudiate the April 17, 1991 directive of Mr. Justice Papadakos which requires the discharge of fifty-nine members of the court staff.

The petition alleges that both this court's appointment of Mr. Justice Papadakos as an overseer and his

directive to terminate staff positions violate the Pennsylvania Constitution. It alleges that the appointment exceeds the supervisory authority granted the Supreme Court in Article V, section 10(a), which provides: "The Supreme Court shall exercise general supervisory and administrative authority over all the courts...." It is petitioners' position that our appointment of Mr. Justice Papadakos to oversee the budget of the Philadelphia court system is a *de facto* appointment of the Justice as a president judge, violating both Article V, section 5(a), which requires that a president judge be a member of the court over which he presides, and Article V, section 17(d), which prohibits any court from exercising "any power of appointment except as provided in this Constitution." The petition refers to Article V, section 10(d), which provides that the president judge of a court with more than seven judges shall be selected for a five-year term by the members of the court, pursuant to which Judge Blake was duly elected in December 1990, and claims that the judges of the common pleas court have been unconstitutionally disenfranchised by the Supreme Court's action.

Article V of the Pennsylvania Constitution, which defines the judiciary, begins with the words: "The judicial power of the Commonwealth shall be vested in a unified judicial system...." Within this unified system, it is required that "[t]he Supreme Court shall exercise general supervisory and administrative authority over all the courts...." Art. V, § 10(a). In furtherance of that responsibility, this court has for some time monitored the administration of the courts of Philadelphia with increasing unease. It was only after lengthy respite to allow the court to reform itself, with no appreciable improvement, that this court ordered Messrs. Justice Papadakos and Cappy to exercise a more direct supervisory role.

Petitioners' characterization of the appointment of Messrs. Justice Papadakos and Cappy as the *de facto* appointment of a president judge for the court of common pleas misapprehends two things.

First, as this is a collegial court, every action of the court or of an individual justice is done ultimately with the concurrence of a majority of the court. The December 19, 1990 order assigning to Messrs. Justice Papadakos and Cappy the task of supervising the budgetary and administrative structure of the Philadelphia court system is effective only "until further order of this Court." The court is informed of the actions taken by Messrs. Justice Papadakos and Cappy in furtherance of the December 19 order; if such actions fail to satisfy a majority of this court, a "further order" will issue and any inappropriate action will be countermanded. The challenged action by Mr. Justice Papadakos is emphatically not an inappropriate one.

 Second, pursuant to the Constitution and the Judicial Code, it is fully within this Court's authority to prescribe the powers and duties of the president judges and any limitations thereon. The Constitution does no more than establish the office of president judge and the manner in which it shall be filled; it sets out no powers or duties of the office. Although Section 16(f) of the Schedule to Article V adopted in 1967 provided that the president judge "shall be the administrative head of the court and shall supervise the court's judicial business," and Section 16(g) specified that the administrative judges of the court's divisions "shall assist the president judge in supervising the judicial business of the court and shall be responsible to him," those sections were only effective "[u]ntil otherwise provided by law." [1] In 1976, the General Assembly provided otherwise by law when it enacted the Judicial Code, Title 42 of the Pennsylvania Consolidated Statutes. Section 325(e), effective June 27, 1978, sets out the powers and duties of president judges as follows:

**Powers of president judge.**—*Except as otherwise provided or prescribed* by this title, *by general rule or by*

---

**1.** It is also to be noted that Section 16(j) of the Schedule provided that "[t]he exercise of all supervisory and administrative powers detailed in this section 16 shall be subject to the supervisory and administrative control of the Supreme Court."

*order of the governing authority,* the president judge of a court shall:

(1) Be the executive and administrative head of the court, supervise the judicial business of the court, promulgate all administrative rules and regulations, make all judicial assignments, and assign and reassign among the personnel of the court available chambers and other physical facilities.

(2) Exercise the powers of the court under section 2301(a)(2) (relating to appointment of personnel).

42 Pa.C.S. § 325(e) (Emphasis added). As the emphasized language makes abundantly clear, the Supreme Court as the governing authority, 42 Pa.C.S. § 102, has the power to alter the duties of president judges described elsewhere in the statute. To the extent that they affected the powers of President Judge Blake, the Order of December 19, 1990 and the April 17, 1991 directive of Mr. Justice Papadakos are consistent with this authority as well as the Court's general supervisory and administrative authority over the unified judicial system, Pa. Const. Art. V, Section 10(a).[2]

■ Additionally, petitioners fail to appreciate the distinction between the duties of a president judge and the duties of administrative judges of the divisions of a court of common pleas. Administrative judges have, since 1980, been appointed by the Supreme Court, and are charged with the administration of their respective divisions. To dispel any vagueness in this distinction, this court entered a directive on April 11, 1986, at No. 55 Judicial Administration Docket No. 1, Eastern District, which specifically defined the duties of administrative judges. The essential portion

2. Judge Blake asserts a denial of due process in that he was not given benefit of notice or a hearing prior to the promulgation of the Court's Order. As the foregoing discussion indicates, however, the office of president judge has no inherent constitutional powers, and the statutorily described powers are specifically made subject to exception by general rule or order of this Court. President Judge Blake has thus been deprived of no right or interest. Neither is there authority for the proposition that notice and hearing are required before this Court may act in its administrative and supervisory capacity.

of that directive requires administrative judges to "appoint and assign all personnel of the division," paragraph 1(A), 509 Pa. XLI, 506 A.2d LI (1986), as well as a host of other supervisory duties to facilitate the speedy and proper administration of justice. That directive was promulgated pursuant to the Pennsylvania Constitution, Article V, section 10(c) and 42 Pa.C.S. § 325(e). The sixty-five member staff under President Judge Blake duplicates the functions performed by the administrative judges and their staffs, and is thus in large part expendable.

For these reasons, we reject petitioners' challenge to the order assigning oversight of the Philadelphia court system to Messrs. Justice Papadakos and Cappy and to the specific directive issued by Mr. Justice Papadakos requiring the discharge of employees from the staff of the president judge. Accordingly, we have entered an order denying the petition.

FLAHERTY, J., joins the PER CURIAM opinion and files a concurring opinion in which PAPADAKOS, J., joins.

PAPADAKOS, J., files a concurring opinion.

NIX, C.J., files a dissenting opinion in which McDERMOTT, J., joins.

McDERMOTT, J., files a dissenting opinion in which NIX, C.J., joins.

FLAHERTY, Justice, concurring.

I write only to state that the position of the petitioners was presented with what legal authority could be mustered in support of it, and, after intense judicial consideration, was deemed totally without merit and frivolous by a majority of the court, including the chief justice who joined the adjudication of denial. Oral argument before this court is not by right and most matters are resolved without it. In fact a matter on the miscellaneous docket is seldom afforded oral argument; thus the statement that somehow the court has circumvented the "customary procedure" is inaccurate. A "hearing" is not necessary to establish a factual basis for reform since the data is available to the court in

the course of its administrative function and is widely known and publicized.

Every effort to reform the court system in Philadelphia has met with resistance, and it appears this effort is no exception.

PAPADAKOS, J., joins in this concurring opinion.

PAPADAKOS, Justice, concurring.

I join Messrs. Justice Larsen, Flaherty, Zappala and Cappy in the Per Curiam Opinion and I join Mr. Justice Flaherty in his Concurring Opinion.

NIX, Chief Justice, dissenting.

The issue raised in the instant appeal requires that we harmonize the constitutional scheme conferring administrative and supervisory authority over the judicial system in this Court with the concurrent constitutional grant of administrative and supervisory power vested in the president judges of the various inferior courts within the unified judicial system. Article V, section 10 invests in this Court a "general supervisory and administrative authority over all the courts and justices of the peace...." *See* Article V, § 10(a). The Schedule to the judicial article, section 16(f), provides for the selection of president judges of the inferior courts and states that that officer "shall be the administrative head of the court and shall supervise the court's judicial business."[1] It is to be noted that the Schedule further provides "[t]he exercise of all supervisory and administrative powers detailed in Section 16 shall be subject to the supervisory and administrative control of the Supreme Court." Article V, § 16(j).

Notwithstanding the clear primacy of the power conferred under Article V, § 10(a) over that vested in the

---

[1]. It is well established that provisions of the Schedule to the Constitution are to be given the same force and effect as the provisions contained in the main body of the Constitution. *Noecker v. Woods,* 259 Pa. 160, 102 A. 507 (1917); *Commonwealth ex rel. Brown v. Heck,* 251 Pa. 39, 95 A. 929 (1915). *See, e.g., Commonwealth v. Pattison,* 109 Pa. 165 (1885).

president judge under Article V, § 16(f),[2] *see* Article V, § 16(j),[3] it is fundamental that a constitutional grant of power may not be construed as being illusory. Thus there must be a legitimate basis articulated for this Court to intrude upon an area which is generally recognized as being within the administrative and supervisory authority of the president judge of the inferior court. The intent of the framers of our constitution to confer qualitatively different powers of control over the administrative and supervisory powers is further evidenced by the description of the power conferred in this Court as being a "general" one. This, in my judgment, was intended to limit the power vested in this Court to systemic concerns. In my view, the petitioners persuasively assert that this Court's order of December 19, 1990 and the acts taken thereunder exceeded and violated the general supervisory and administrative authority vested in this Court.

The justification offered by a majority of the Court for the action taken is that

[i]n furtherance of that responsibility, this Court has for some time monitored the administration of the courts of Philadelphia with increasing unease. It was only after lengthy respite to allow the court to reform itself, with no appreciable improvement, that this Court ordered [two members of this Court] to exercise a more direct supervisory role.

Op. at pp. 458–459.

If these facts had been made part of the record in this matter, there might be justification for exercising the power

**2.** § 16. Courts and judges

(f) One of the judges of the court of common pleas shall be president judge and he shall be selected in the manner provided in section ten (d) of this article. He shall be the administrative head of the court and shall supervise the court's judicial business.

**3.** § 16. Courts and judges

(j) The exercise of all supervisory and administrative powers detailed in this section sixteen shall be subject to the supervisory and administrative control of the Supreme Court.

of this Court to remedy the situation. However, no record has been made of these alleged conditions. There is, therefore, no predicate of record upon which we can act.[4] If such a record had been established, I might agree that the actions taken were necessary. Under these circumstances, however, in which a majority of the Court justifies the Court's actions based on a factual predicate which, by its own design, the Court has prevented petitioners from challenging, I am constrained to dissent. By circumventing the customary procedure of briefing and argument, the Court has effectively foreclosed petitioners' opportunity to contest the assertions upon which the majority's decision rests.

Accordingly, I dissent.

McDERMOTT, J., joins this dissenting opinion.

McDERMOTT, Justice, dissenting.

This is not an ordinary case as where litigants come to resolve controversy among themselves. This case requires this Court to define its powers put to question by Judges of the First Judicial District. Any resolution will affect the function of both parties and directly the public interest. The majority has chosen to rest not only upon their power but exclusively upon their own resources in deciding who should prevail.

I dissent because all the resources available by briefing and public argument should be pressed to service. To decide without argument and further briefing on a matter of such importance can prove an uneven contest under such circumstances. I do not question the supervisory authority of the Supreme Court, I believe, however, that that supervisory authority must be exercised under constitutional paradigms. Good intentions are not necessarily constitutional equivalents.

4. This assertion by the majority underscores the pertinence of the observations of Mr. Justice McDermott in criticizing the majority's having truncated the normal procedure in this case.

In denying the relief sought in the petition of the Board of Judges of Philadelphia County, the majority contends that "petitioners fail to appreciate the distinction between the duties of a president judge and the duties of administrative judges of the divisions of a court of common pleas. Administrative judges have, since 1980, been appointed by the Supreme Court, and are charged with the administration of their respective divisions. To dispel any vagueness in this distinction, this court entered a directive on April 11, 1986, at No. 55 Judicial Administration Docket No. 1, Eastern District, which specifically defined the duties of administrative judges." Per Curiam Opinion at 6.

After researching the mechanics of the changes in the selection process and duties of administrative judges, I am compelled to conclude, for the reasons set forth below, that on a previous occasion this Court has unconstitutionally changed the structure of the Philadelphia court system, which now form the underpinning which is in part relied upon by the majority.

In 1968, the people of the Commonwealth approved extensive changes to the Constitution of 1874, including the complete repeal of Article V, The Judiciary, and the adoption of a new Article V. The new Article established our current unified judicial system. As part of the new Article, an implementing Schedule was approved by the electorate. The introductory paragraph of the Schedule provides as follows:

"This schedule is a part of this judiciary article, and it is intended that the provisions contained herein shall have the same force and effect as those contained in the numbered sections of the article." [1]

These are obvious words of mandate that should not be abrogated or interpreted without full argument. To do less is to indulge in the exercise of unlimited power. The

---

**1.** Unless a schedule intends its concepts be incorporated in any following action, it is an ambiguous and misleading device. Otherwise, it solicits votes under one flag, to float another after the votes are counted. For any authority to give less than it says and intends is deception.

Schedule, for the most part, delineated the particular structures, powers and jurisdictions of the courts of the City of Philadelphia, Allegheny County and the rest of the Commonwealth.

Section 16 of the Schedule addressed the City of Philadelphia and provided, in relevant part, as follows:

Sec. 16 *Courts and judges.*

Until otherwise provided by law: ...

(g) Each division of the court of common pleas shall be presided over by an *administrative judge,* who shall be one of its judges and *shall be elected for a term of five years by a majority vote of the judges of that division. He shall assist the president judge* in supervising the judicial business of the court and shall be responsible to him.... (emphasis supplied)

Pa.Constitution, Schedule Article 5 § 16.

In 1972, this Court adopted the Pennsylvania Rules of Judicial Administration, including Rule 706(d) which addressed the office of administrative judge statewide and provided, in pertinent part, as follows:

(d) *Divisions of a court.* Each division of a court having three or more divisions shall be presided over by an administrative judge, who shall be one of the judges of the division and who shall be selected for a five year term by the members of the court assigned to the division and eligible to vote thereon pursuant to Rule 702.

Pa.R.J.A. 706(d)–1972.

As is readily apparent, the language of Rule 706(d), which was intended to have statewide application, tracked the language of Section 16(g) of the Constitutional Schedule, which only related to the Philadelphia courts. Accordingly, the original Rule 706, adopted in 1973, was harmonious with the Constitutional Schedule because it did not alter the authority of the President Judge.

In 1978, the Legislature passed the Judiciary Act Repealer Act (JARA),[2] which became part of the Judicial Code.[3] A

2. Act 1978, April 28, P.L. 202, No. 53.
3. Act 1976, July 9, P.L. 586, No. 142, now 42 Pa.C.S. 101 *et seq.*

portion of JARA purported to suspend and supersede many of the Sections of the Constitutional Schedule including much of Section 16 (dealing with the Philadelphia courts), and specifically Section 16(g) (which addressed the election and duties of administrative judges in Philadelphia). Many, if not most, of the purportedly suspended and superseded Sections of the Schedule were replaced in the Judicial Code with corresponding sections or provisions, presumably intended to be consistent with the provisions of the Schedule. Whether the General Assembly did or did not have authority to abrogate the Schedule is a matter that should be argued. The Schedule delineated the hierarchy of authority in Common Pleas Courts. It is certainly arguable whether the General Assembly or this Court could alter that paradigm by providing authority in either the General Assembly or this Court to run the courts as suits their pleasure. The people in voting for the Constitution apparently thought otherwise. How local courts operate was obviously an important issue and the answer equally clear; they intended that their elected Judges should bear the first responsibility. It is equally arguable that they did not intend this Court or the General Assembly to alter the authority vested in the President Judge by appointment of Administrative Judges invested with power constitutionally reserved to the President Judge.

The Judicial Code did not provide a section or provision corresponding to the selection process for administrative judges in Section 16(g) of the Schedule.[4]

In 1980, this Court changed Rule 706(d) of the Rules of Judicial Administration to substantially its current form. Rule 706(d) now provides as follows:

**4.** 42 Pa.C.S. § 953, however, does address the duties formerly contained in Section 16(g) in a manner consistent with the Schedule, to wit,

"§ 953. *Administrative judge of divisions.*
Each division of a court of common pleas shall have an *administrative judge who shall assist the president judge of the court* in supervising and administering the business of the court and shall be responsible to him." (emphasis supplied)

(d) *Divisions of a Court.* Each division of a court having three or more judges shall be presided over and administered by an administrative judge, who shall be one of the judges of the court of which the division is a part *and shall be selected by the Supreme Court* to serve for a term of three years or at the pleasure of the Court. Upon the occurrence of a vacancy in the office of administrative judge, the president judge shall notify the Supreme Court immediately. (emphasis supplied)

Pa.R.J.A. No. 706(d).

Accordingly, by adopting current Rule 706, this Court changed the selection process of administrative judges in Philadelphia from the election process prescribed in the Constitutional Schedule to an appointment process. Subsequently, in 1986, this Court entered the directive referred to by the majority [5] which had the effect of changing the constitutionally mandated role of Philadelphia administrative judges from assistants to the president judges to usurpers of their duties and powers. In short, the majority has not only changed the election process to an appointee of their choice, but have clothed him in authority never mentioned in either the Article or its Schedule.

In our constitutional system neither the General Assembly, nor the Courts have the power to adopt laws, rules or regulations in derogation of a constitutional provision. Admittedly, the instant case is complicated by the inclusion of the provisions concerning administrative judges in Philadelphia in a Schedule [6] rather than in the main text of the

---

**5.** April 11, 1986, at No. 55 Judicial Administration Docket No. 1, Eastern District, 509 Pa. XLI, 506 A.2d LI (1986).

**6.** In 1844, this Court held,

"What is this schedule? It is a temporary provision for the preparatory machinery necessary to put the principles of the amendments in motion without disorder or collision. Its purpose was not to control those principles by the happening of an event, but to carry the whole into effect without break or interval. Its use was merely to shift the machine gradually into another track, and, having done its office, it was to be stowed away in the lumber-room of the government."

*Commonwealth v. Clark,* 7 Watts & Sergeant's 127, 133 (1844).

Constitution [7]. However, in *Commonwealth v. Pattison,* 109 Pa. 165 (1885) we treated a schedule as being of constitutional stature in holding that a contradictory legislative act was invalid: "The single question presented by this record is whether, under the admitted facts, the Constitution prescribes a rule for determining which of the present judges of the Third Judicial District should be commissioned as president of the several courts therein. If it does, every Act of Assembly inconsistent therewith must yield." *Id.* at 169.[8]

In the instant case, under the rationale employed in *Pattison,* the purported suspension and superseding by the General Assembly of Section 16(g) of the Constitutional Schedule in JARA was invalid, absent the adoption of a legislative provision consistent with the selection provisions of Section 16(g). Similarly, the current form of Rule 706(d) and the 1986 directive are equally infirm because they are in derogation of the original provisions of the Schedule relating to the election of Philadelphia administrative judges by their peers and their constitutionally prescribed role as assistants to the president judges. I am not persuaded by the majority's argument that the introductory language of the Schedule, i.e. "Until otherwise provided ...", permits the General Assembly or this Court to adopt laws or rules *inconsistent* with the original provisions. If such were the case, then the General Assembly and/or this Court would have *carte blanche* power to thwart the will of the people as expressed in the Constitution. President Judge Blake was elected pursuant to the intention of the Constitution. His authority and responsibility are clearly defined. To select others (administrative judges) to do what

7. Pennsylvania is almost alone among sister states in using this device.

8. The *Pattison* holding was ultimately overruled in the case of *President Judges Determination Cases,* 420 Pa. 243, 216 A.2d 326 (1966); however, the court did not contradict the *Pattison* court's interpretation as to the effect of a constitutional schedule.

the Constitution requires from him, is action that in the least of fairness requires a hearing.

NIX, C.J., joins this dissenting opinion.