Charles H. **CUFFELD**, Honorable, President Judge Philadelphia Traffic Court, Plaintiff,

v.

The **SUPREME COURT OF PENNSYLVANIA**, et al., Defendants.

Civ. A. No. 96–3635.

United States District Court, E.D. Pennsylvania.

July 23, 1996.

---

Samuel C. Stretton, West Chester, PA, for plaintiff Honorable Cuffeld.

Arlin M. Adams, Schnader Harrison Segal & Lewis, Philadelphia, PA, Michael J. Barry, Schnader, Harrison, Segal and Lewis, Philadelphia, PA, for defendants Supreme Court of Pennsylvania, Honorable Nix, Honorable Flaherty, Honorable Zappala, Honorable Cappy, Honorable Castille, Honorable Newman, Honorable Nigro, Honorable Bonavita-

cola, Court Administrators Sobolevitch, Marelia.

## *MEMORANDUM*

LOWELL A. REED, Jr., District Judge.

Plaintiff the Honorable Charles H. Cuffeld, President Judge Philadelphia Traffic Court has brought this action against the following defendants: the Supreme Court of Pennsylvania; seven Justices of the Supreme Court of Pennsylvania (collectively "Justices"); the Honorable Alex Bonavitacola, President Judge Court of Common Pleas of Philadelphia County; Cynthia Marelia, Court Administrator Philadelphia Traffic Court; and Nancy M. Sobolevitch, Court Administrator of Pennsylvania. Plaintiff alleges that defendants have infringed his rights guaranteed under the federal Constitution in violation of 42 U.S.C. §§ 1983, 1985. Plaintiff further alleges that these defendants have violated the doctrine of separation of powers embodied in the Constitution of the Commonwealth of Pennsylvania. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343.

Currently before the Court is the motion by defendants to dismiss. (Document No. 6) The Court has considered the complaint, the motion of defendants, the respective filings of the parties and the oral argument thereon. For the following reasons, the motion will be granted in part and denied in part. With regard to all counts of the complaint as against defendant the Supreme Court of Pennsylvania and with regard to Counts II and V of the complaint as against the individual defendants, the motion will be granted. The motion will also be granted with respect to Count I as against the individual defendants, but only to the extent that Count I asserts a claim for violation of the right of plaintiff to freedom of association as secured by the First Amendment to the Constitution of the United States. The motion will be denied in all other respects, and the remaining claims by plaintiff will be allowed to proceed.

While I do not generally comment on pending litigation except to render legal opinions, I feel compelled in this case to note how regrettable it is that this Court is involved in a dispute of this nature. At a time when the Philadelphia court system is in the midst of reorganization and the judiciary as a whole is facing a multitude of challenges, it is unfortunate that this state's judicial system, as represented by both plaintiff and defendants, is faced with an additional drain on its limited resources because of this dispute. This Court cannot, of course, comment on the ultimate viability of the remaining claims asserted by President Judge Cuffeld; the resolution of the instant motion to dismiss is necessarily based solely on the allegations contained in the complaint and the legal arguments asserted by the parties and not on whatever evidence may be available to support or refute these claims. But regardless of the merits of these claims, it is the fervent hope of this Court that this dispute will be speedily resolved by the parties without the need for further action by this Court.

## I. FACTUAL BACKGROUND

The following facts are based upon the well-pleaded allegations of the complaint. *See Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492–93 n. 2, 53 L.Ed.2d 557 (1977).

Plaintiff has been a duly elected Judge of the Philadelphia Traffic Court since 1982. In 1992, the Governor of Pennsylvania appointed plaintiff as the President Judge of the Philadelphia Traffic Court. At all relevant times, plaintiff was the only African American President Judge of any court in Philadelphia County.

Defendant Marelia is the Court Administrator for the Philadelphia Traffic Court. Over the objections of plaintiff, she was appointed to this position in 1995 by defendant Sobolevitch acting at the direction of defendant the Supreme Court of Pennsylvania and the defendant Justices. Marelia was chosen because she was recommended by a powerful politician.

In an Order dated March 26, 1996, the defendant Justices returned control of the First Judicial District to the individual courts effective April 1, 1996, which included *inter alia* returning administrative control of the Philadelphia Traffic Court to plaintiff in his capacity as President Judge. As part of this

Order, an Administrative Governing Board ("Administrative Board") was created for the First Judicial District consisting of plaintiff, the President Judges of two other Philadelphia courts, the three Administrative Judges of the Philadelphia Court of Common Pleas and defendant Sobolevitch.

Exercising his new powers, plaintiff sought to make a number of parking and personnel changes. Defendant Marelia objected to these changes and communicated her objections to the defendant Justices. As a result of this communication, defendant Justice Cappy stayed all personnel decisions in a memorandum dated March 29, 1996, a memorandum which defendant Marelia promptly circulated to all defendants as well as to members of the Traffic Court staff. Defendant Marelia then sent plaintiff, on April 1, 1996, a memorandum informing him that she was overruling his parking changes.

In response to these actions, plaintiff through his counsel petitioned the Administrative Board in a letter dated April 3, 1996 regarding what he saw as the improper co-opting of his powers by defendant Marelia and the defendant Justices; plaintiff also repeatedly raised his concerns at Administrative Board meetings. Defendant President Judge Bonavitacola, with the consent of the other defendants, responded on April 4, 1996 with a promise of discussion of plaintiff's concerns at the first Administrative Board meeting but also with a warning that plaintiff had no authority to retain counsel. No such discussion ever occurred, however, and instead defendant Marelia, with the consent and approval of the other defendants, continued to overrule and otherwise take over the responsibilities of plaintiff from this time forward, including making hiring and reorganization decisions without consulting plaintiff.

In a letter dated April 23, 1996, plaintiff advised defendant President Judge Bonavitacola of the actions of defendant Marelia and stated his intention to terminate defendant Marelia effective April 26, 1996. In response to this letter, on April 25, 1996 President Judge Bonavitacola sent a memorandum to all members of the Administrative Board halting all personnel transactions. Plaintiff then sought to attend, with his attorney, an Administrative Board meeting at which defendant Justice Cappy was to be present, but President Judge Bonavitacola informed plaintiff that he could not have his attorney present at this meeting. In addition, on May 8, 1996 the defendant Justices [1] created the new position of Administrative Judge for the Philadelphia Traffic Court and transferred to that position many of the responsibilities of plaintiff; on May 9, 1996, they removed plaintiff from the Administrative Board, replacing him with the new Administrative Judge for the Philadelphia Traffic Court. The President Judges of the both the Philadelphia Municipal Court and the Philadelphia Court of Common Pleas remained on the Administrative Board. Plaintiff then filed the instant action.

## II. DISCUSSION

▅▅▅ Defendants make the instant motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6), arguing that this Court lacks jurisdiction over the subject matter of this case and that plaintiff has failed to state a claim upon which relief can be granted. In deciding a motion to dismiss for lack of jurisdiction over the subject matter pursuant to Rule 12(b)(1), a court must accept as true the allegations contained in the complaint of plaintiff absent a challenge to the factual truthfulness of the complaint's jurisdictional averments. *Mortensen v. First Fed. Sav. and Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). Defendants make no such factual challenge here. Similarly, in deciding a motion to dismiss for failure to state a claim upon which relief can be granted pursuant Rule 12(b)(6) a court must take all well-pleaded factual allegations in the complaint as true; dismissal is only appropriate if the plaintiff could prove no set of facts that would entitle him to the relief requested. *See Miree,* 433 U.S. at 27 n. 2, 97 S.Ct. at 2492–93 n. 2; *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d

---

1. With the exception of defendant Chief Justice Nix, who did not participate in this decision.

*See* Complaint Exhibits Q, R.

80 (1957). This Court must therefore consider all of the well-pleaded factual allegations contained in the complaint to be true for the purposes of deciding the instant motion.

Plaintiff has asserted five counts in his complaint. They are as follows: (I) a 42 U.S.C. § 1983 ("Section 1983") claim of violation of the First and Fourteenth Amendments, specifically the right of plaintiff to freedom of speech and of association; (II) a Section 1983 claim of violation of the Fifth and Fourteenth Amendments, specifically the right of plaintiff to not be deprived of his property or liberty interests without due process of law; (III) a Section 1983 claim of violation of the Fourteenth Amendment, specifically the right of plaintiff to equal protection; (IV) a 42 U.S.C. § 1985 ("Section 1985") claim of conspiracy to violate the rights of plaintiff as detailed in the first three counts; and (V) a violation of the doctrine of separation of powers embodied in the Constitution of the Supreme Court of Pennsylvania. Defendants make both an Eleventh Amendment attack on the jurisdiction of this Court over the entire complaint and a series of attacks on the substance of each of the counts asserted by plaintiff. The individual defendants also assert that they have qualified immunity to the claims by plaintiff. The Court will first address the Eleventh Amendment argument, then the arguments by defendants with regard to each count of the complaint, and then the qualified immunity defense.

## A. *Eleventh Amendment*

▇▇▇ The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Under the Eleventh Amendment, a state is generally immune from suits by its own citizens in federal court as well as from suits by citizens of other states, unless the state has consented to such suits. *Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990). This immunity is available to an "arm of the state," as well as to the state itself,[2] and is available to states and their arms "regardless of the nature of the relief sought," *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984). In addition, the Supreme Court of the United States has held that Congress did not intend for Section 1983 to overcome the sovereign immunity of states embodied in the Eleventh Amendment and therefore states and their arms are not "persons" who can be held liable under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66–67, 70, 109 S.Ct. 2304, 2309–10, 2311–12, 105 L.Ed.2d 45 (1989).

▇▇▇ With regard to state officials, the Eleventh Amendment bars suits in federal court that seek damages or other remedies that have the effect of providing retroactive monetary relief, but it does not bar suits in federal court that only seek prospective injunctive relief. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 697 (3d Cir.1996). The claim for prospective injunctive relief must, however, be based upon federal law; regardless of the type of relief sought, the Eleventh Amendment bars claims in federal court against state officials that are based upon state law. *Pennhurst*, 465 U.S. at 121, 104 S.Ct. at 919.

▇▇▇ Applying these principals to the instant case, plaintiff conceded at oral argument that defendant the Supreme Court of Pennsylvania is an arm of the state of Pennsylvania and therefore protected by the Eleventh Amendment. *See, e.g.*, Pa. Const. art. 5, §§ 1, 2 (creating the Pennsylvania state judicial system, including the Supreme Court); *Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 731–32 (7th Cir.1994) (holding that Eleventh Amendment bars federal suits against state courts), *cert. denied*, —— U.S. ——; 115 S.Ct. 62, 130 L.Ed.2d 20 (1994);

---

**2.** *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572–73, 50 L.Ed.2d 471 (1977).

*Robinson v. Court of Common Pleas,* 827 F.Supp. 1210, 1211 (E.D.Pa.1993) (holding that the Supreme Court of Pennsylvania is a state entity for purposes of the Eleventh Amendment). Given this protection, the Supreme Court of Pennsylvania could only be sued in federal court if it or the Commonwealth of Pennsylvania had consented to such suits, something which neither it nor the state has done. *See* 1 Pa.Cons.Stat.Ann. § 2310 ("it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity"); 42 Pa.Cons.Stat.Ann. § 8521(b) ("[nothing contained in this subchapter [Actions Against Commonwealth Parties] shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States"); *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir.1981) ("[b]y statute, Pennsylvania has specifically withheld consent" to suit in federal court). This Court concludes therefore that the Supreme Court of Pennsylvania is immune from suit in federal court. As a result, the instant motion to dismiss will be granted as to all counts with respect to defendant the Supreme Court of Pennsylvania.

■ With regard to the claims of plaintiff against the individual defendants under Section 1983 and Section 1985 asserted in Counts I through IV of the complaint, however, plaintiff here is seeking prospective injunctive relief against these officials and so his Section 1983 and Section 1985 claims based upon his federal constitutional rights are not barred by the Eleventh Amendment. *See Pennhurst,* 465 U.S. at 102–03, 104 S.Ct. at 909–10. While defendants initially argued that any attempt to resolve these claims would necessarily require this Court to determine whether the alleged actions of defen-

dants violated state law, at oral argument defendants acknowledged that these claims are not attempts to force defendants to conform their behavior to state law.[3] This Court concludes therefore that the Eleventh Amendment does not bar the claims against the individual defendants raised by plaintiff in Counts I through IV of the complaint.

■ The result is different, however, for the claim asserted in Count V of the complaint against the individual defendants based upon the separation of powers doctrine embodied in the Constitution of the Commonwealth of Pennsylvania. This claim is barred by the Eleventh Amendment because it asks this federal court to order state officials to conform their conduct to state law. *See Pennhurst,* 465 U.S. at 121, 104 S.Ct. at 919; *Blake v. Papadakos,* 953 F.2d 68, 73 n. 5 (3d Cir.1992) (noting in *dictum* that federal courts would have no jurisdiction over a suit by the then President Judge of the Philadelphia County Court of Common Pleas against the then Justices of the Supreme Court of Pennsylvania to the degree that such a suit would seek to force the Justices to comply with state law). While plaintiff argues that this claim should be allowed to proceed because otherwise he will have no forum in which to pursue this claim given that he is suing the Supreme Court of Pennsylvania and its Justices, plaintiff cites no authority that endorses this "lack of forum" exception to the Eleventh Amendment; the one case relied upon by plaintiff is not on point as it involved a decision about discretionary abstention and not about the applicability of Eleventh Amendment immunity. *See Stretton v. Disciplinary Bd.,* 944 F.2d 137, 140–41 (3d Cir.1991). In addition, the reasoning used by the Supreme Court of the United States in *Pennhurst* does not lend itself to such an exception; in *Pennhurst* the Court held that suits to enforce state law against state officials were barred by the Eleventh Amendment because they (1) failed to vindicate the supreme authority of federal law and (2) constituted a great intrusion on state sovereignty. *Pennhurst,* 465 U.S. at 106, 104

---

3. Defendants did maintain at oral argument, however, that state law is relevant to the due process claim asserted by plaintiff in Count II of

the complaint; this assertion is discussed below. *See supra* part II.C.

S.Ct. at 911. The fact that some of the defendant state officials here are Justices of the state's highest court is irrelevant to both of these concerns. And finally, plaintiff has overlooked the fact that Pennsylvania has provided that when it is impossible to assemble a quorum of the Supreme Court, for example because many or all of the Justices are disqualified from hearing a particular case, then other Pennsylvania judges may be temporarily assigned to the Supreme Court. *See* 42 Pa.Cons.Stat.Ann. § 326(c). This statutory provision undermines the "lack of forum" argument by plaintiff since any claim brought by plaintiff in state court against the defendant Justices would, under this statute, be ultimately decided by judges temporarily assigned to the Supreme Court and not by the defendant Justices.

▇▇▇ Plaintiff also attempts to argue that the defendants have somehow waived their Eleventh Amendment immunity because of the alleged lack of a state forum in which plaintiff could bring suit against defendants for violating state law. The only case cited by plaintiff in support of this argument is not on point, however, as in that case waiver was only found in instances where a state chose to participate in litigation in a federal court by, for example, filing a claim in federal bankruptcy court. *See In re 995 Fifth Ave. Assoc., L.P.,* 963 F.2d 503, 507 (2d Cir.1992), *cert. denied sub nom. 995 Fifth Ave. Assoc., L.P. v. New York State Dep't of Taxation,* 506 U.S. 947, 113 S.Ct. 395, 121 L.Ed.2d 302 (1992). In addition, waiver is conditional on some affirmative action being taken by the state;[4] the mere fact that defendants here include the Supreme Court of Pennsylvania and its Justices is not an "affirmative action" on their part that could constitute waiver. This Court concludes, therefore, that defendants have not waived their Eleventh Amendment immunity with regard to the claim by plaintiff that defendants have violated state law. As a result, the motion by defendants to dismiss will be granted with respect to Count V of the complaint as against the individual defendants as well as with respect to all counts as against defendant the Supreme Court of Pennsylvania.

### B. *Count I: First Amendment*

▇▇▇ Turning now to the separate claims asserted by plaintiff, in order to establish a prima facie case under Section 1983 plaintiff must show (1) that the defendants acted under color of state law and (2) that they deprived him of a right secured by the federal Constitution or federal law. *Groman v. Township of Manalapan,* 47 F.3d 628, 633 (3d Cir.1995). Defendants do not dispute that they acted under color of state law; they argue, however, that they have not deprived plaintiff of any right secured by the Constitution or federal law.

In Count I of his complaint, plaintiff asserts that defendants have retaliated against him for speech which is protected by the First Amendment and that defendants have violated his freedom of association. With regard to the freedom of speech claim, defendants counter that Count I fails to state such a claim because (1) the statements allegedly made by plaintiff do not constitute protected speech under the First Amendment as they were not on a matter of public concern; (2) the Supreme Court of Pennsylvania was justified in refusing to allow plaintiff to exercise absolute administrative control over the Philadelphia Traffic Court because his allegedly protected speech was disruptive of the working relationship between plaintiff, defendants and other court employees; and (3) the Supreme Court of Pennsylvania assumed and retained administrative control over the Philadelphia Traffic Court before plaintiff made any of his allegedly protected speech. With regard to the freedom of association claim, defendants argue (1) that plaintiff has failed to allege a constitutionally protected association and (2) that, under any conditions, the position held by plaintiff is such that it is constitutionally permissible to consider the associations of plaintiff.

### 1. Freedom of Speech

▇▇▇ Turning first to the claim by plaintiff of violation of his right to freedom of speech, the claim by a public employee of retaliation for engaging in activity protected

---

**4.** *In re 995 Fifth Ave. Assoc., L.P.,* 963 F.2d at 507.

by the freedom of speech clause of the First Amendment is analyzed using a three-step process. First, the plaintiff must show that the activity in question is protected; to deserve protection "the speech must be on a matter of public concern, and the employee's interest in expression on this matter must not be outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." *Pro v. Donatucci,* 81 F.3d 1283, 1288 (3d Cir.1996) (citation omitted). Second, the plaintiff must show that the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Id.* Finally, the employer can successfully defend against the claim if it can establish that it would have taken the adverse employment action regardless of whether the employee had engaged in protected conduct. *Id.*

 The first argument raised by defendants is that the statements of plaintiff at issue here were not on a matter of public concern. "An employee's speech addresses a matter of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community." *Pro,* 81 F.3d at 1288. Whether the speech of an employee is of public concern in a particular instance will turn on "the content, form, and context of a given statement, as revealed by the whole record." *Id.* In his complaint, plaintiff asserts that his freedom of speech claim is based on the following speech:

1. On April 3, 1996, plaintiff sent, through his counsel, a letter to defendant President Judge Bonavitacola challenging the removal of administrative authority from plaintiff and the apparent disparate treatment of plaintiff as compared to the President and Administrative Judges of the other courts in the First Judicial District;

2. At meetings of the Administrative Board which occurred after April 1, 1996, plaintiff protested the shifting of his responsibilities from him, an elected official, to defendant Marelia, an appointed official who was appointed as a result of her political connections;

3. On April 23, 1996, plaintiff sent a letter to defendant President Judge Bonavitacola stating that plaintiff intended to terminate the employment of defendant Marelia because of her continued failure to cooperate and open disobedience to plaintiff in administrative matters; and

4. On May 8, 1996, plaintiff sent a letter to defendant President Judge Bonavitacola stating that he would attend a meeting of the Administrative Board and defendant Justice Cappy provided that his attorney could accompany him.

Complaint ¶¶ 36–37, 39, 43, 47–49, 51, Exhibits I, M, O. Plaintiff also alleges that defendants sought to chill his allegedly protected speech by informing him that he had no authorization to retain counsel. Complaint ¶ 38, Exhibit J.

 Defendants attempt to characterize all of this speech as simply complaints about a matter of personal concern, specifically the extent of plaintiff's administrative powers as President Judge. It is true that usually when a public employee complains solely about a reduction in his or her responsibilities, such a complaint is not on a matter of public concern and so is not protected by the First Amendment. *See, e.g., Marquez v. Turnock,* 765 F.Supp. 1376, 1385 (C.D.Ill. 1991) (holding that private complaints by public employee that his responsibilities were being lessened and his recommendations were not being followed were, at least for the most part, not on a matter of public concern), *aff'd,* 967 F.2d 1175 (7th Cir.1992). But in this instance, plaintiff has made sufficient allegations to demonstrate that his complaints did not relate solely to the removal of his personal responsibilities but also touched on the issues of the proper role of a gubernatorially appointed President Judge versus a judicially appointed Court Administrator and the extent of political influence on administrative decisions in the judiciary, issues which are of general public concern. *See* Complaint ¶¶ 43, 48–49, 51; *Connick v. Myers,* 461 U.S. 138, 149, 103 S.Ct. 1684, 1691, 75 L.Ed.2d 708 (1983) (holding that a question relating to whether assistant district attorneys felt pressured to work on political

campaigns touched on a matter of public concern even though the rest of the questions in the questionnaire at issue did not). And the fact that these communications were made in the form of private communications with defendants, as opposed to a letter to a newspaper or in a public speech, is not determinative as to whether the alleged speech touched on matters of public concern. *See Givhan v. Western Line Consol. Sch. Dist.,* 439 U.S. 410, 414–15, 99 S.Ct. 693, 695–97, 58 L.Ed.2d 619 (1979). While the relative prominence of matters of public concern in the speech by plaintiff, as opposed to the prominence of matters of purely personal concern, is not clear from the complaint, taking all inferences in the favor of plaintiff this Court cannot say at this time that the speech alleged by plaintiff was on matters of purely personal concern and so outside of the protection of the First Amendment. *See Zamboni v. Stamler,* 847 F.2d 73, 77–78 (3d Cir.1988) (holding that the complaints of a public employee about a reorganization plan were on a matter of public concern even though the employee was primarily motivated by the adverse effect of the plan on himself), *cert. denied,* 488 U.S. 899, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988).

■ Defendants also argue, however, that even if the alleged speech was in part on matters of public concern, it is not protected by the First Amendment because the speech was so disruptive to the employment relationship between plaintiff, defendants and other court employees that the interest of defendants in promoting the efficient provision of public services outweighs any interest plaintiff may have had in speaking on these matters of public concern. In *Pickering v. Board of Educ.,* the Supreme held that even if speech by a public employee is on a matter of public concern, it will fall outside of the protection of the First Amendment if the interest of the employee, as a citizen, in commenting on matters of public concern is outweighed by "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). The disruptive effect of speech by a public employee need not be actual; it is enough if the speech

is reasonably likely to be disruptive. *See Waters v. Churchill,* 511 U.S. 661, ——, 114 S.Ct. 1878, 1887, 128 L.Ed.2d 686 (1994). Applying these principles to the allegations of the complaint, defendants are correct in their assertion that it could reasonably be inferred that speaking through a lawyer and threatening to terminate a subordinate, as plaintiff did here, could be so disruptive of the employment relationship so as to place the speech at issue here outside of the protection of the First Amendment. But this is not the only reasonable inference that could be made from the averments of the complaint, and the extent of this disruption and even whether the defendants considered, at the time that it was made, the speech by plaintiff as being disruptive is unclear from the complaint. *See Watters v. City of Philadelphia,* 55 F.3d 886, 896–97 (3d Cir.1995) (noting that the issue of disruptiveness requires an evaluation of the impact of the speech at issue on the ability of supervisors to discipline, harmony among co-workers, the ability of the speaker to perform her duties, and the regular operations of the public employer). Taking all inferences in favor of plaintiff, as this Court is required to do at this stage of the proceedings, this Court cannot conclude that the speech alleged by plaintiff was so disruptive as to outweigh the interest of plaintiff in speaking on the matters of public concern discussed above. The cases cited by defendants are not to the contrary, as each of them involved speech which on its face was more disruptive than the speech at issue here. *See Connick,* 461 U.S. at 152–54, 103 S.Ct. at 1692–94 (questionnaire distributed to co-workers); *Sprague v. Fitzpatrick,* 546 F.2d 560, 565 (3rd. Cir.1976) (public statements to press), *cert. denied,* 431 U.S. 937, 97 S.Ct. 2649, 53 L.Ed.2d 255 (1977); *Clark v. Holmes,* 474 F.2d 928, 931 (7th Cir.1972) (teacher repeatedly criticized the behavior of the administration and faculty in front of his students), *cert. denied,* 411 U.S. 972, 93 S.Ct. 2148, 36 L.Ed.2d 695 (1973). This Court concludes therefore that this argument by defendants must fail at this time.

■ Finally, defendants argue that there is no causal connection between the alleged

speech and the alleged adverse actions taken by defendants against plaintiff because the Supreme Court took control of the Philadelphia Traffic Court before any of the alleged speech occurred. Unfortunately for defendants, while it is true that some of the adverse actions were taken before plaintiff made any of the allegedly protected speech, many of the adverse actions took place after that speech was made and it would require taking an inference against plaintiff to conclude, as defendants urge, that these later actions were mere formalities in light of the pre-speech actions. *See* Complaint ¶¶ 40–42, 44, 49–51. This Court concludes therefore that plaintiff has sufficiently alleged a causal connection between his allegedly protected speech and at least some of the adverse actions.

In light of the foregoing discussion, this Court concludes that the motion by defendants to dismiss must be denied with respect to Count I of the complaint to the extent that it asserts a claim against the individual defendants for violation of the right of plaintiff to freedom of speech.

## 2. Freedom of Association

Plaintiff also asserts in Count I of his complaint that his right secured by the First Amendment to freedom of association has been violated by defendants. Specifically, plaintiff alleges that because defendant Marelia was supported by an unnamed powerful politician, defendants retaliated against him for his opposition to her appointment. *See* complaint ¶¶ 56, 59, 61(d), 62. In other words, plaintiff appears to be alleging that the actions by defendants were taken in retaliation for the refusal by plaintiff to associate with defendant Marelia and/or this unnamed powerful politician.

 Under the First Amendment, a state generally may not refuse to hire, dismiss, promote, transfer or rehire a public employee because that employee has chosen to exercise her right of association. *Rutan v. Republican Party*, 497 U.S. 62, 75, 79, 110 S.Ct. 2729, 2737, 2739–40, 111 L.Ed.2d 52 (1990). This right of association encompass-

es both the right to enter into and maintain certain intimate human relationships and the right to associate for the purpose of engaging in those activities protected by the First Amendment, including speech, assembly, petition for the redress of grievances, and the exercise of religion. *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 3249–50, 82 L.Ed.2d 462 (1984). Included in this right is the right not to associate. *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234–35, 97 S.Ct. 1782, 1799–1800, 52 L.Ed.2d 261 (1977).

 The problem with the claim asserted by plaintiff here is that the associations allegedly foisted upon him are not alleged to relate either to intimate human relations or to associations that exist for the purpose of engaging in activities protected by the First Amendment. The intimate human relations type of association is exemplified by familial relations, including marriage, raising and educating children and cohabiting with one's relatives. *Roberts*, 468 U.S. at 619, 104 S.Ct. at 3250. While this type of association can extend to other types of relationships, depending on the size, purpose, policies, selectivity, congeniality and other characteristics of the "association" involved,[5] plaintiff cites no case and this Court has not found one which would extend this type of association to the workplace. *See, e.g., Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547, 1551 (10th Cir.1989) (holding that "intimate human relationships" are generally familial in nature and do not extend to workplace associations). As for associations involving First Amendment protected activities, the cases that have found a right of association to exist in those contexts have generally involved membership in a particular political party or support of a particular political party or candidate. *See, e.g., O'Hare Truck Service, Inc. v. City of Northlake*, —— U.S. ——, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996) (right of association violated when city terminated independent contractor relationship because tow truck operator refused to contribute to the reelection campaign of the mayor and instead supported his opponent); *Rutan*, 497 U.S. 62, 110 S.Ct. 2729 (right of association violated

---

5. *Roberts*, 468 U.S. at 620, 104 S.Ct. at 3250–51.

278

when state made adverse employment decisions against state employees and applicants who did not support the Republican Party); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980) (right of association violated when state discharged public defenders solely because they were Republicans); *Correa v. Fischer,* 982 F.2d 931, 934 (5th Cir.1993) (finding no violation of the right of association when plaintiffs were terminated because of their perceived loyalty to the previous officeholder and not because of their support of a political candidate or party). Plaintiff has failed to cite a single case, and this Court has found none, in which the opposition of a public employee to the politically influenced appointment of another public employee can implicate the right of the first public employee to freedom of association. The most similar case cited by plaintiff involved someone who was terminated in order to make way for a patronage appointee. *See Conjour v. Whitehall Tp.,* 850 F.Supp. 309, 316 (E.D.Pa.1994). Assuming that this Court would adopt the position that freedom of association extends to the situation in *Conjour,* the instant case is distinguishable from *Conjour* in that plaintiff here has not been terminated and in that plaintiff here has not alleged that his powers were transferred because defendant Marelia is a favorite of a particular politician. Rather, plaintiff here has asserted that it was his opposition to the appointment of defendant Marelia that, at least in part, led to the removal of his administrative powers and responsibilities;[6] the validity of such actions by defendants is better characterized as a claim for violation of the right of plaintiff to freedom of speech rather than as a claim for violation of the right of plaintiff to freedom of association. *See supra* part II.B.1. This Court concludes therefore that the claim by plaintiff for violation by defendants of his First Amendment right to freedom of association must fail as a matter of law. The motion by defendants to dismiss will therefore be granted as to the Count I of the complaint to the extent that it asserts a claim against the individual defendants for violation of the right of plaintiff to

freedom of association as secured by the First Amendment.

### C. *Count II: Due Process*

In Count II of his complaint, plaintiff asserts that defendants have violated his right to due process of law by depriving him of his property and liberty interests in his "constitutionally protected position as President Judge for Traffic Court by the removal of his duties and responsibilities by the Defendants without a hearing, without an opportunity to respond and without utilizing the disciplinary system." Memorandum of law in support of complaint at 9; *accord* Complaint ¶¶ 51, 71–74. In support of their motion to dismiss, defendants argue that under the applicable law plaintiff has no constitutionally protected property or liberty interest in his duties and responsibilities as President Judge. This Court agrees.

In order to state a claim under Section 1983 for deprivation of due process, a plaintiff must allege (1) a deprivation of a property or liberty interest protected by the Fifth or Fourteenth Amendment, and (2) the occurrence of this deprivation without due process. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). Turning first to whether plaintiff was deprived of a property interest by defendants, plaintiff relies on state law as the source of any such interest and so it is state law that this Court must turn in order to determine whether such an interest exists. *See Roth,* 408 U.S. at 578, 92 S.Ct. at 2709–10. Unfortunately for plaintiff, the Supreme Court of Pennsylvania has already definitively stated that no property interest exists with regard to the administrative powers of a President Judge. *Petition of Blake,* 527 Pa. 456, 593 A.2d 1267, 1269 n. 2 (1991) ("As the foregoing discussion indicates, however, the office of president judge has no inherent constitutional powers, and the statutorily described powers are specifically made subject to exception by general rule or order of this Court. President Judge Blake has thus been deprived of no right or

6. *See* Complaint ¶¶ 59, 61(d), 62 (alleging that plaintiff was retaliated against for his opposition to the appointment of defendant Marelia, not

that his duties were given to defendant Marelia because of her political associations and his lack thereof).

interest."). As this Court is bound by the pronouncements of the Supreme Court of Pennsylvania with regard to Pennsylvania state law, this Court must conclude that plaintiff has no property interest in the duties and powers that defendants have allegedly taken from him.

Plaintiff attempts to distinguish *Blake* by noting that he, unlike Blake, became a President Judge through gubernatorial appointment. Unfortunately for plaintiff, however, there is nothing in the *Blake* opinion which indicates that the source of the appointment has any relevance to the conclusion reached by the Supreme Court of Pennsylvania on this issue. The Supreme Court of Pennsylvania in *Blake* did not rely on the specific language of the provision describing the appointment and powers of a President Judge of the Court of Common Pleas; it relied instead on the general language of the portion of the Pennsylvania Constitution which provides that these powers are only available "[u]ntil otherwise provided by law," and that "[t]he exercise of all supervisory and administrative powers detailed in this section sixteen [of Schedule to Article 5, Constitution of the Commonwealth of Pennsylvania] shall be subject to the supervisory and administrative control of the Supreme Court." Pa. Const. sched. art. 5, § 16(j). Both the supervisory and administrative powers of the President Judge of the Traffic Court and the supervisory and administrative powers of the President Judge of the Court of Common Pleas are detailed in section sixteen of the Schedule to Article 5 of the Constitution of the Commonwealth of Pennsylvania. *See* Pa. Const. sched. art. 5, § 16(f), (i). As a result, this Court concludes that regardless of how plaintiff was appointed to the position of President Judge, the holding in *Blake* is still applicable to the instant case.

▮▮▮▮ With regard to the liberty interest asserted by plaintiff, plaintiff argues that the actions of defendants have somehow defamed him, and that this defamation combined with the removal of his administrative powers constituted a deprivation of a liberty interest without due process of law. This claim suffers from two fatal flaws. First,

plaintiff has failed to point to any defamatory comments by defendants or to even allege that the actions of defendants were somehow based on a belief by defendants that plaintiff is guilty of some type of wrongdoing. While plaintiff has alleged that the removal of his powers caused him "to suffer ... loss of reputation in the community and great emotional and mental distress and embarrassment,"[7] the mere removal of his powers without any negative comments by defendants does not rise to the level of defamation. *See Roth*, 408 U.S. at 573–74, 92 S.Ct. at 2707–08 (holding that merely declining to rehire a person did not constitute defamation for deprivation of liberty interest purposes absent any charges against the good name or reputation of that person). And second, defamation alone is insufficient to constitute a liberty interest; defamation must be combined with a more tangible interest under state law, and the Supreme Court of Pennsylvania has already held that a President Judge has no legal interest under state law in his administrative duties and responsibilities. *See Petition of Blake*, 593 A.2d at 1269 n. 2; *see also Paul v. Davis*, 424 U.S. 693, 711, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405 (1976) (holding that defamation by a state official alone does not violate a liberty interest of a plaintiff absent the alteration or extinguishment of a right or status previously recognized by state law); *Clark v. Township of Falls*, 890 F.2d 611, 620 (3d Cir.1989) (holding that when an employee had his duties changed but had no interest created or protected by the Constitution or state law in those duties then no liberty interest claim was stated).

The cases cited by plaintiff are not to the contrary. In *Conjour*, the defendants publicly announced that the plaintiff had performed inadequately. 850 F.Supp. at 316. Here plaintiff has not alleged that any such announcements or comments were made. And in *Albrechta v. Borough of White Haven*, the district court allowed a due process liberty claim to proceed only after it found that the terminated employee had a legally recognized right to his position. *See* 810 F.Supp.

---

7. Complaint ¶ 64.

139, 145–46 (M.D.Pa.1992). This Court concludes therefore that the motion by defendants to dismiss should be granted as to Count II of the complaint.

### D. *Count III: Equal Protection*

■■■■■ The constitutional guarantee of equal protection is "a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae*, 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). Absent a suspect classification, this right is only violated when the state distinguishes between individuals based on differences that are irrelevant to a legitimate government objective. *Lehr v. Robertson*, 463 U.S. 248, 265, 103 S.Ct. 2985, 2995–96, 77 L.Ed.2d 614 (1983). If a classification based on race is at issue, however, this right is violated unless the state has a compelling interest for the classification and has narrowly tailored the classification to meet that interest. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 493 (plurality opinion), 520, 109 S.Ct. 706, 721–22, 735–36, 102 L.Ed.2d 854 (Scalia, J., concurring in judgement) (1989).

■■■■ Defendants argue that plaintiff has failed to allege that they intentionally classified plaintiff based upon his race, as required to sustain a claim under the Equal Protection Clause of the Fourteenth Amendment. *See Hernandez v. New York*, 500 U.S. 352, 359–60 (plurality opinion), 372, 111 S.Ct. 1859, 1866–67, 1873, 114 L.Ed.2d 395 (O'Connor, J., concurring in judgment) (1991); *Washington v. Davis*, 426 U.S. 229, 242, 96 S.Ct. 2040, 2048–49, 48 L.Ed.2d 597 (1976) (requiring proof of disparate treatment and not merely of disparate impact in order for a constitutional equal protection violation to exist). Defendants ignore, however, the following allegation by plaintiff: "[t]he Plaintiff, at all pertinent times, had his powers, duties and responsibilities of his office removed from him and his position on the Administrative Board taken from him because of ... the fact that he is an African American." Complaint ¶ 56; *see also id.* at ¶¶ 78–79. While somewhat sparse, this allegation is sufficient to meet the intentionality requirement at this stage of the proceedings.

■■■■ Defendants also argue that plaintiff has failed to allege the necessary personal involvement of the named defendants which is required to support an allegation against them of a violation of the constitutional right of plaintiff to equal protection. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir.1990). A review of the complaint shows, however, that plaintiff has made allegations regarding how each of the defendants was involved in the various decisions to remove his administrative powers. *See, e.g.*, Complaint ¶¶ 32 (implying that all defendants were involved in the March 29, 1996 decision to stay the attempts by plaintiff to transfer personnel), 34 (stating that all defendants consented and approved a memorandum from defendant Marelia countermanding the attempt by plaintiff to reassign parking spaces), 40 & 42 (stating that all defendants consented and approved the taking over by defendant Marelia of the responsibilities of plaintiff), 49–50 (stating that the defendant Justices ordered plaintiff removed from the Administrative Board). Taking all inferences in the favor of plaintiff, as required at this stage of the proceedings, this Court concludes that the allegations of the involvement of defendants in the various specific actions taken against plaintiff, combined with the general allegation of intentional disparate treatment because of his race, is sufficient to defeat the motion by defendants to dismiss as to this count. *See Andrews*, 895 F.2d at 1478 (holding that "the necessary involvement can be shown in two ways, either through allegations of personal direction or of actual knowledge and acquiescence") (citation omitted); *District Council 47, Am. Fed'n of State, County and Mun. Employees, AFL–CIO v. Bradley*, 795 F.2d 310, 314–15 (3d Cir.1986) (holding that at the motion to dismiss stage a complaint sufficiently alleges individual involvement if it asserts that a defendant had oversight over and approved the allegedly discriminatory actions). The district court case relied upon by defendants does not conclude to the contrary, as that case involved a non-jury trial and not a motion to dismiss; as a result, in that case the plaintiff was required to produce evidence and the court was required to weigh that

evidence and make factual findings, factual findings which ultimately supported its conclusion that plaintiff had failed to prove that the defendants had been personally involved in the allegedly improper conduct. *See Dowling v. Commonwealth of Pennsylvania Liquor Control Board,* Civ, A. No. 88–7568, 1992 WL 328840 (E.D.Pa. Oct. 27, 1992). Here, of course, plaintiff can rest on the allegations in his complaint which this Court must accept as true, and as has been already discussed those allegations are sufficient at this stage of the proceedings to demonstrate that defendants were personally involved in the allegedly improper conduct. As a result, the motion by defendants to dismiss will be denied as to Count III of the complaint.

### E. *Count IV: Section 1985*

The only argument defendants make in support of dismissal of this Count is based upon the presumed dismissal of Counts I, II and III. As Counts I and III will not be dismissed, the motion by defendants to dismiss will be denied as to Count IV also.

### F. *Qualified Immunity*

■ Defendants also argue that they are qualifiedly immune from the claims by plaintiff. Qualified immunity only applies, however, when a plaintiff is seeking monetary damages against state officials. *See Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiff in the instant case has not specifically asked for monetary damages; while plaintiff did include in his complaint a request that this Court "grant any additional relief that is necessary and just under the circumstances," [8] plaintiff has since specifically disavowed that he is seeking any monetary damages from defendants. *See* memorandum of law by plaintiff in opposition to the motion by defendants to dismiss, at 12 ("[i]n the present case, no monetary damages are sought, only injunctive and declaratory relief"). While defendants also note that plaintiff is seeking counsel fees and costs pursuant to 42 U.S.C. § 1988, this Court agrees with plaintiff that any consideration of whether qualified immunity would apply to counsel fees would be premature at this stage of the proceedings. As a result, this argument by defendants must fail.

### III. CONCLUSION

For the foregoing reasons, the motion by defendants to dismiss will be granted with regard to all counts of the complaint as against defendant the Supreme Court of Pennsylvania and with regard to Counts II and V of the complaint as against the individual defendants. The motion will also be granted with respect to Count I to the extent that it asserts a claim for violation of the right of plaintiff to freedom of association as against the individual defendants. The motion will be denied in all other respects.

An appropriate Order follows.

### ORDER

**AND NOW,** this 23rd day of July, 1996, upon consideration of the motion by defendants to dismiss (Document No. 6), the response by plaintiff thereto, the supplemental memorandum submitted by defendants, the supplemental memorandum submitted by plaintiff, and the oral argument on this motion held before the Court on July 12, 1996, for the reasons stated in the attached memorandum, it is hereby **ORDERED** that the motion to dismiss is **GRANTED IN PART** and **DENIED IN PART. IT IS FURTHER ORDERED** that:

1. The motion to dismiss is **GRANTED** with regard to all counts as against defendant the Supreme Court of Pennsylvania only, and the complaint is **DISMISSED** as against defendant the Supreme Court of Pennsylvania only;

2. The motion to dismiss is **GRANTED** with regard to Counts II and V of the complaint ·as against defendants Robert N.C. Nix, Jr., John P. Flaherty, Jr., Stephen A. Zappala, Ralph J. Cappy, Ronald D. Castille, Sandra Schultz Newman, Russell M. Nigro, Alex Bonavitacola, Cynthia Marelia, and Nancy M. Sobolevitch, and Counts II and

---

**8.** Complaint ¶¶ 69(i), 76(i), 82(i), 88(i).

**282**

V of the complaint are **DISMISSED** as against these defendants;

3. The motion to dismiss is **GRANTED** with regard to Count I of the complaint to the extent that this Count asserts a claim for violation of the right of plaintiff to freedom of association as guaranteed by the First Amendment to the Constitution of the United States against defendants Robert N.C. Nix, Jr., John P. Flaherty, Jr., Stephen A. Zappala, Ralph J. Cappy, Ronald D. Castille, Sandra Schultz Newman, Russell M. Nigro, Alex Bonavitacola, Cynthia Marelia, and Nancy M. Sobolevitch, and Count I of the complaint to the extent that this Count asserts a claim for violation of the right of plaintiff to freedom of association as guaranteed by the First Amendment to the Constitution of the United States is **DISMISSED** as against these defendants; and

4. The motion to dismiss is **DENIED** in all other respects.