Honorable Bernard J. AVELLINO,
Plaintiff,

v.

Honorable John W. HERRON,
et al., Defendants.

No. Civ.A.97–152.

United States District Court,
E.D. Pennsylvania.

Dec. 16, 1997.

Joseph P. Green, Jr., John J. Duffy, Duffy & Green, West Chester, PA, for Plaintiff.

David M. Donaldson, Philadelphia, PA, H. Robert Fiebach, Cozen and O'Connor, Philadelphia, PA, for Defendant John W. Herron.

David M. Donaldson, Philadelphia, PA, Arlin M. Adams, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, for Defendant Alex Bonavitacola.

## ORDER–MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

**And Now,** this **16th** day of **December, 1997,** following oral argument with counsel for the parties, and upon consideration of the motion to dismiss by the defendants, and plaintiff's response thereto, it is hereby **ORDERED** that the motion is **DENIED** as to Judge Herron as to Counts 1 & 2. It is **FURTHER ORDERED** that the motion is **GRANTED** as to Judge Bonavitacola as to Counts 1 & 2. It is **FURTHER ORDERED** that the motion is **GRANTED** for both defendants as to Count 3. The Court's decision is based upon the following reasoning:

1. This case presents complex issues involving principles of federalism and comity. On the one hand, the federal courts have an unflagging obligation to remedy violations of constitutional rights.[1] On the other hand, such superintendency must be performed consistent with respect for the sovereignty of the states. Over the past decade, this court and our court of appeals have been repeatedly called upon to harmonize these principles in the course of adjudicating disputes between the Supreme Court of Pennsylvania and individual state judges. *See, e.g., Guarino v. Larsen,* 11 F.3d 1151 (3d Cir.1993) (justices of Supreme Court of Pennsylvania and their state-wide administrator revoked senior judge status of Philadelphia Court of Common Pleas judge); *Blake v. Papadakos,* 953 F.2d 68 (3d Cir.1992) (challenge to Supreme Court of Pennsylvania's exercise of administrative powers belonging to president judge of Philadelphia Court of Common Pleas); *Cuffeld v. Nix,* 1996 WL 729045 (E.D.Pa.1996), aff'd, 133 F.3d 909, 1997 WL 765578 (3d Cir.1997) (challenge to removal of administrative powers of president judge of

---

1. Under the United States Constitution, both the federal and state courts are equally obligated to guard against violations of constitutional rights. However, as Judge Edward R. Becker recently noted, in some cases the Pennsylvania state judges may lack the requisite decisional independence because, under the Pennsylvania Constitution, they do not enjoy life tenure. Judge Becker pointed to the recent experience of a Pennsylvania state judge who after striking down as unconstitutional a key provision of Pennsylvania's version of "Megan's Law," was the subject of discussions by state legislators who openly considered issuing a subpoena to demand of him an explanation of his decision. "I voted ... Megan's Law unconstitutional," Judge Becker is reported to have said. "Would a state judge do that? I wonder." Michael A. Riccardi, *Becker; 'Decisional Independence' of State Judges in Question,* The Legal Intelligencer, October 16, 1997, at 5.

Philadelphia Traffic Court by Supreme Court of Pennsylvania); *White v. Judicial Inquiry and Review Bd. of Pennsylvania*, 744 F.Supp. 658 (E.D.Pa.1990) (state trial judge challenging removal from elected office). Given the sensitivity of the interests involved, caution and surefootedness on the part of the Court is warranted before adjudicating this action.

2. The parties to this lawsuit are duly elected and commissioned judges of the Court of Common Pleas of Philadelphia County. Defendant John W. Herron is also the administrative judge of the Trial Division of the Court of Common Pleas. Defendant Alex W. Bonavitacola is the president judge of the Court of Common Pleas.

3. On October 17, 1996, acting pursuant to his authority as administrative judge, Judge Herron assigned Judge Avellino to preside over felony-waiver proceedings in criminal cases for the 1997–98 term.

4. On January 6, 1997, Judge Avellino refused to report to his judicial assignment to preside over felony waiver cases characterizing his reassignment as a "demotion." On January 7, 1997, Judges Herron and Bonavitacola filed a petition with the Supreme Court of Pennsylvania seeking a rule to show cause why Judge Avellino should not be compelled to comply with his assignment. The next day, the Supreme Court of Pennsylvania issued a rule to show cause upon Judge Avellino directing him to show cause within five days why he should not comply with his assignment and ordering him to report to his assignment.

5. Judge Avellino, however, did not comply with the rule to show cause. Instead, on January 9, 1997, Judge Avellino filed a lawsuit in federal court pursuant to 42 U.S.C. § 1983 naming as defendants Judge Herron, Judge Bonavitacola, and the Supreme Court of Pennsylvania, alleging violations of his First Amendment right to free speech. Judge Avellino claimed that Judges Bonavitacola and Heron had "retaliated" against him by transferring or demoting him to a less desirable judicial post in response to his

private and public criticism of, and complaints about, Judge Heron's alleged judicial misconduct. Judge Avellino sought damages and injunctive relief preventing the defendants from enforcing the transfer. Following a hearing on January 10, 1997, the Court denied Judge Avellino's motion for a temporary restraining order. The Court also denied the defendants' motion to dismiss as to Judges Herron and Bonavitacola, granted the motion to dismiss as to the Supreme Court of Pennsylvania, and afforded Judge Avellino leave to file an amended complaint to name individually as defendants the Justices of the Supreme Court of Pennsylvania.

6. Judge Avellino then filed a written response to the Supreme Court of Pennsylvania's show cause order raising as a defense, *inter alia*, the claim that his assignment to preside over felony waiver proceedings violated his constitutional right to free speech protected by the First Amendment of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution. In this vein, Judge Avellino again asserted that the transfer was made in retaliation for various complaints of alleged judicial misconduct which he previously had made against Judge Herron.

7. On February 7, 1997, following a show cause hearing, the Supreme Court of Pennsylvania decided that: (1) it had jurisdiction over the proceedings; (2) the assignment of Judge Avellino to the felony waiver program was lawful; and that (3) as a matter of law, the assignment of Judge Avellino to the felony waiver program did not constitute "retaliation" in violation of Judge Avellino's right to exercise his free speech under the First Amendment of the United States Constitution and Article I, Section 7 of the Pennsylvania Constitution.[2]

8. On April 10, 1997, Judge Avellino filed an amended complaint in the instant case naming as defendants Judges Herron and Bonavitacola only.

9. Presently before the Court is the defendants' motion to dismiss.

---

**2.** Only the Supreme Court of Pennsylvania's decision as to Judge Avellino's first amendment

retaliation claim is involved in this case.

### Rooker–Feldman Doctrine

10. The defendants first move to dismiss the case under Rule 12(b)(1) of the Federal Rules of Civil Procedure asserting that the Court lacks subject matter jurisdiction over the allegations of Judge Avellino's amended complaint. Specifically, the defendants contend that the Court is without subject matter jurisdiction to hear the case pursuant to the *Rooker–Feldman* doctrine.

11. Because federal courts are courts of limited jurisdiction, when the defendants raise the issue of whether *Rooker–Feldman* divests the Court of subject matter jurisdiction, the Court must satisfy itself that it has the power to hear the case. *See Ernst v. Child & Youth Services of Chester County*, 108 F.3d 486, 491 (3d Cir.1997). In considering a motion to dismiss under Rule 12(b)(1) involving a facial attack upon the allegations in the pleadings, the Third Circuit has instructed district courts to apply the standard for dismissals under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Pinewood Estates of Michigan v. Barnegat Twp. Leveling Bd.*, 898 F.2d 347, 349 n. 4 (3d Cir.1990) (concluding that it was "undoubtedly the correct approach" for the district court to treat the defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) as a motion to dismiss under Rule 12(b)(6) and citing the "no set of facts" standard under *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *See also Larsen v. Senate of the Commonwealth of Pennsylvania*, 955 F.Supp. at 1557–59 (applying Rule 12(b)(6) standard to a motion to dismiss under *Rooker–Feldman*); *White v. Judicial Inquiry and Review Bd. of Pennsylvania*, 744 F.Supp. 658, 667 (E.D.Pa.1990) (same and citing *Pinewood Estates*). Accordingly, the Court must "accept as true the facts alleged in the [amended] complaint and reasonable inferences drawn from them. Dismissal ...

is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved." *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir.1990).[3]

12. The Third Circuit has explained that under the *Rooker–Feldman* doctrine " 'federal courts lack subject matter jurisdiction to review final adjudications of a state's highest court' or to evaluate constitutional claims that are 'inextricably intertwined with the state court's [decision] in a judicial proceeding.' " *Guarino*, 11 F.3d at 1156. Similarly, the Third Circuit has explained that "[d]istrict courts lack subject matter jurisdiction once a state court has adjudicated an issue because Congress has conferred only original jurisdiction not appellate jurisdiction on the district courts." *Id.* at 1157.

13. However, the Third Circuit has held that "[the] *Rooker–Feldman* [doctrine], like claim preclusion to which it has a near resemblance, only applies when litigants have had a 'full and fair opportunity to litigate their ... claim in state court.' " *Guarino*, 11 F.3d at 1162 n. 8 (quoting *Valenti v. Mitchell*, 962 F.2d 288, 296 (3d Cir.1992)). In *Guarino*, the Third Circuit specifically raised the issue of whether a litigant is afforded a full and fair opportunity to litigate his claim when a state court is ruling upon "the legality of the [state] court's own actions." *Guarino*, 11 F.3d at 1159 n. 4 Since Judge Guarino had not raised this issue, the Third Circuit in *Guarino* found that it need not decide whether the *Rooker–Feldman* doctrine was inapplicable on that ground. *Id.*

14. Unlike Judge Guarino, however, Judge Avellino has raised the issue of whether in the end, the Supreme Court of Pennsylvania in adjudicating Judge Avellino's claim was reviewing its own actions and therefore, whether Judge Avellino was afforded a full and fair opportunity to litigate his constitutional claim in state court. Accordingly, the

---

**3.** The defendants may bring a 12(b)(1) motion that attacks the existence of subject matter jurisdiction in fact, apart from any pleadings, "at any stage of the proceedings from the time the answer has been served until after the trial has been completed." *See Mortensen v. First Federal Savings & Loan Ass'n.*, 549 F.2d 884, 891–92 (3d Cir.1977). Since no answer has yet been filed by the defendants in this case, any factual attack on the Court's subject matter jurisdiction pursuant to Rule 12(b)(1) is premature. However, even if the Court were to treat the defendants' 12(b)(1) motion at this stage of the proceedings as a factual attack on the Court's subject matter jurisdiction, the motion would still be denied based upon this record.

Court is confronted in this case with the issue left undecided by the Third Circuit in *Guarino*.

15. As to his complaint that he did not have a full and fair hearing in state court, Judge Avellino identifies two infirmities with the state court proceedings: (1) first, Judge Avellino complains that the Supreme Court of Pennsylvania unfairly adjudicated his claims without permitting him to take discovery; and (2) second, according to Judge Avellino, the actions of Judge Herron as administrative judge in assigning him to preside over felony waiver proceedings were in essence the actions of the Supreme Court of Pennsylvania.[4] Therefore, according to Judge Avellino, if the actions of Judge Herron can be fairly attributed to the Supreme Court of Pennsylvania, then the Supreme Court of Pennsylvania, in ruling that Judge Avellino's reassignment was lawful and rejecting his First Amendment retaliation claim, would have decided upon the legality of its own actions. *See Guarino*, 11 F.3d at 1159 n. 4. While the Court finds no merit as to the first reason, the Court will explore the second.

16. In order to decide whether Judge Avellino was afforded a full and fair opportunity to litigate his constitutional claim in state court for purposes of the *Rooker–Feldman* doctrine, the Court looks for guidance to the closely related doctrine of preclusion. Under preclusion jurisprudence, the United States Supreme Court has held that the "full and fair" requirement means that the state procedure must satisfy the minimum requirements of the Due Process Clause. *See Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481–83, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982).

17. "It is elementary that 'a fair trial by a fair tribunal is a basic requirement of due process.'" *Weiss v. U.S.*, 510 U.S. 163, 178, 114 S.Ct. 752, 761, 127 L.Ed.2d 1 (1994) (quoting *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955)); *See also Sill v. Pennsylvania State Univ.*, 462

F.2d 463, 469 (3d Cir.1972) (concluding that the basic requirements of due process are not simply notice and the opportunity to be heard, but "to be heard by a fair and impartial tribunal.") Moreover, "[t]he due process clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242, 100 S.Ct. 1610, 1613, 64 L.Ed.2d 182 (1980).

18. A person is denied his right to an impartial decision maker when the state procedure "offer[s] a possible temptation to the average man as a judge ... not to hold the balance nice, clear, and true ..." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955) (quoting *Tumey v. Ohio*, 273 U.S. 510, 532, 47 S.Ct. 437, 444, 71 L.Ed. 749 (1927)). To put it another way, the right to an impartial and disinterested tribunal is compromised "in the absence of a [state] proceeding in which [a person] may present his case with assurance that the arbiter is not predisposed to find against him." *Marshall*, 446 U.S. at 242, 100 S.Ct. at 1613 (quoting *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 172, 71 S.Ct. 624, 649, 95 L.Ed. 817 (1951)). Therefore, if the procedure supplied by the state to adjudicate the constitutional claim violates the requirements of due process, then the federal court may not grant the state judgment preclusive effect. *See e.g., Kremer v. Chemical Const. Corp.*, 456 U.S. at 481–83, 102 S.Ct. at 1898 ("[a] State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment."); *Guarino v. Larsen*, 11 F.3d at 1159 n. 4 ("A similar argument is that when a [state] court makes a decision concerning the legality of its own actions, it may be too biased to justify abstention by the federal courts even if its actions are adjudicative.") (citing *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973)).

4. While the defendants contend that Judge Avellino has waived the issue of whether he was denied a full and fair opportunity to litigate his constitutional claims in state court by not alleging bias before the Supreme Court of Pennsylvania, they have provided no controlling Third Circuit or Pennsylvania caselaw on this point.

19. If Judge Avellino can demonstrate that, under the circumstances of this case, the procedure supplied by the state to adjudicate his constitutional claim provided for the Supreme Court of Pennsylvania to review the legality of its own actions, then he would have been denied a full and fair opportunity to litigate his claim in state court and the *Rooker–Feldman* doctrine would not apply.

20. The Supreme Court of Pennsylvania has commented upon the relationship between itself and the administrative judge. *See In re Petition of Blake*, 527 Pa. 456, 593 A.2d 1267, 1267 (1991). It noted that Article V, Section 10 of the Pennsylvania Constitution vests the Supreme Court of Pennsylvania with "general supervisory and administrative authority over all the courts...." *Id.* (quoting Pa. Const., Article V, § 10(c)).

21. According to the Supreme Court of Pennsylvania, it was under this authority that it issued a directive on April 14, 1986, *see In re: Directive to Administrative Judges Appointed by the Supreme Court*, 509 Pa. XLI (1986),[5] "specifically defin[ing] the duties of [the] administrative judge." *Blake*, 593 A.2d at 1269. The Directive provided that the administrative judge "shall be appointed by the Supreme Court [of Pennsylvania] and shall serve at the pleasure of [that] Court." *Directive*, 509 Pa. at XLI. The Directive vested upon the administrative judge the authority to "assign individual judges to preside in cases," *Directive*, 509 Pa. at XLI, paragraph 3(A), as well as "a host of other supervisory duties to facilitate the speedy and proper administration of justice." *Blake*,

593 A.2d at 1269–70 (discussing Directive of April 14, 1986).[6]

22. It is pursuant to the Directive that the Supreme Court of Pennsylvania appointed Judge Herron to serve as administrative judge at its "pleasure." In turn, pursuant to his authority as administrative judge, Judge Herron assigned Judge Avellino to preside over felony waiver proceedings. *See,* 509 Pa. at XLI.

23. Also according to the Supreme Court of Pennsylvania, since at least 1986, and as a result of "serious and ongoing fiscal and administrative problems in the Philadelphia courts, and the apparent inability or unwillingness of that system to correct the growing deficiencies," *Blake*, 593 A.2d at 1268, it has taken an active role in the administration and management of the courts of Philadelphia County. According to the Supreme Court, by Order of December 19, 1990, it appointed one of its members Justice Papadakos to "oversee the budgetary restructuring" and another one of its members, Justice Cappy, to "oversee the administrative reformation" of the Philadelphia courts. *Blake*, 593 A.2d at 1268.[7]

24. Viewing the allegations in the amended complaint in the light most favorable to Judge Avellino, the Court cannot satisfy itself that the Supreme Court of Pennsylvania's past involvement in the management and administration of the affairs of the First Judicial District, and its appointment of Judge Herron to serve as administrative judge of the trial division at its "pleasure" did not render Judge Herron's actions in

---

5. The Supreme Court of Pennsylvania identified the constitutional and statutory sources of its authority for issuing the directive as follows:

This directive, which further defines the previously promulgated Rule of Judicial Administration is promulgated pursuant to Article V, § 10(c) of the Pennsylvania Constitution which empowers this Court to prescribe lawfully for the 'administration of all course and supervision of all officers of the Judicial Branch' and 42 Pa.C.S. § 325(e) defining the powers of president judges, and authorizing changes in those powers by general rule or order of this Court as governing authority.

Order of April 14, 1986, 509 Pa. at XLIII. Moreover, the defendants cited the directive in their motion to dismiss.

6. There is no issue or challenge in this case as to the ultimate authority of the Supreme Court of Pennsylvania to assign state judicial officers pursuant to its power to do so under the Pennsylvania Constitution.

7. While it is not clear at which point, if ever, the direct superintendency over the First Judicial District by the Supreme Court of Pennsylvania terminated, the Court will assume for purposes of this motion that direct oversight of the First Judicial District was not in place at the time of the relevant events in this case. *See Cuffeld v. Supreme Court of Pa.*, 936 F.Supp. 266, 270–71 (E.D.Pa.1996) ("[T]he [Supreme Court of Pennsylvania] justices returned control of the First Judicial District to the individual courts effective April 1, 1996....").

reassigning Judge Avellino fairly attributable to the Supreme Court of Pennsylvania. Because if the Supreme Court of Pennsylvania sat in judgement of the legality of its own actions, the procedure which the state provided Judge Avellino for adjudicating his constitutional claims may not have satisfied the requirements of the due process clause, the Court will not invoke the *Rooker–Feldman* doctrine at this stage of the proceedings.[8]

### Collateral Estoppel/Res Judicata

■ 25. Second, the defendants contend that the motion should be granted under the doctrines of collateral estoppel (issue preclusion) and res judicata (claim preclusion). To determine whether Judge Avellino's federal lawsuit is barred by the doctrines of collateral estoppel or res judicata, the Court must look to Pennsylvania law as the law of the forum state. *See e.g., Huck on Behalf of Sea Air Shuttle Corp. v. Dawson,* 106 F.3d 45, 48 (3d Cir.1997); *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988) ("[a] federal court applying preclusion principles is bound by the Full Faith and Credit Statute, 28 U.S.C. § 1738, and must give a prior state judgment the same effect as would the adjudicating state").

■ 26. As to collateral estoppel or issue preclusion, it is well-settled under Pennsylvania law that a prior determination of a legal issue is conclusive in a subsequent action between the parties on the same or a different claim when (1) the issue was actually litigated; (2) the issue was determined by a valid and final judgment; (3) the determination was essential to the judgment; and (4) the party against whom the legal issue is asserted had a full and fair opportunity to litigate the issue in question in a prior action. *See e.g., Allegheny International Inc. v. Allegheny Ludlum Steel Corp.,* 40 F.3d 1416, 1431 n. 17 (3d Cir.1994); *Gregory v. Chehi,*

843 F.2d 111 (3d Cir.1988) (citing *Safeguard Mut. Ins. Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975)). It is the fourth factor only which is at issue in this case.

27. For the reasons explained above pertaining to the *Rooker–Feldman* doctrine, the Court likewise cannot conclude that the full and fair requirement under the collateral estoppel doctrine was satisfied, i.e. whether Judge Avellino was afforded by the state a full and fair opportunity to litigate his constitutional claim in state court.

28. Nor can the Court conclude that the defendants have shown that the doctrine of res judicata or claim preclusion is applicable. "Res judicata [ ] is an affirmative defense, *see* Fed.R.Civ.P. 8(c), and the party asserting such a bar has the burden of showing that it applies." *Davis v. United States Steel Supply,* 688 F.2d 166, 170 (3d Cir.1982). Here, the defendants have done nothing more than cite the elements of the doctrine without any attempt to specifically demonstrate how the facts of this case meet those elements. Because the defendants have failed to meet their burden of proof, the Court cannot conclude there is no set of facts under which the plaintiff could prove the doctrine of res judicata to be inapplicable.

### Qualified Immunity

■ 29. Third, the defendants contend that the motion should be granted pursuant to the qualified immunity doctrine since, according to the defendants, the judicial reassignment was "lawful" and "constitutional". The Court will deny the motion to dismiss on this basis as well.

■ 30. In order to determine whether a public official is entitled to qualified immunity, the relevant inquiry involves a two-step analysis: (1) first, the Court must determine whether the law governing the official's conduct was clearly established; and (2) second,

---

8. It should be noted that plaintiff has not suggested nor does the Court find a basis for any suggestion of impropriety on the part of the Supreme Court of Pennsylvania in hearing Judge Avellino's constitutional argument. The issue of whether a full and fair opportunity to litigate a constitutional claim was afforded by the state to Judge Avellino, while encompassing some related concepts, is not the same as the issue of whether the individual members of the Supreme Court of Pennsylvania acted in conformity with Canon 3 C of the Code of Judicial Conduct which states that: "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned ...." Pennsylvania Rules of Court, Code of Judicial Conduct, Canon 3 C, at 833 (West 1996).

under the clearly established law, whether a reasonable public official could have believed that his conduct was lawful. *See e.g., Sherwood v. Mulvihill,* 113 F.3d 396, 399 (3d Cir.1997); *Grant v. City of Pittsburgh,* 98 F.3d 116, 121–22 (3d Cir.1996).

31. Recently, in *Anderson v. Davila,* 125 F.3d 148 (3d Cir.1997), the Third Circuit stated as follows:

> Under *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) and its progeny, an otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech. This doctrine demonstrates that, at least where the First Amendment is concerned, the motives of government officials are indeed relevant, if not dispositive, when an individual's exercise of speech preceded government action affecting that individual.

*Anderson,* 125 F.3d at 161. *See also Crawford–El v. Britton,* 93 F.3d 813, 817 (D.C.Cir. 1996), *cert. granted,* —— U.S. ——, 117 S.Ct. 2451, 138 L.Ed.2d 210 (1997) ("This circuit and others have understood *Harlow* [*v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)] to allow inquiry into subjective motivation where an otherwise constitutional act becomes unconstitutional only when performed with some sort of forbidden motive . . .") (citing cases).

32. Because Judge Avellino has alleged that the actions of the defendants were undertaken in retaliation for his exercise of First Amendment speech putting at issue the motive of the decision maker, the Court cannot conclude that this case should be dismissed under the qualified immunity doctrine at this stage of the proceedings.

### Failure to State a Claim

33. Fourth, and finally, the defendants seek dismissal of the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a cause of action. The purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a complaint. *See Sturm v. Clark,* 835 F.2d 1009, 1011 (3d Cir.1987). In deciding a motion to dismiss for failure to state a claim, the Court must "consider only those facts alleged in the complaint and accept all of the allegations as true," *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994), and must view the allegations in the amended complaint in the light most favorable to the non-moving party. *See Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). Dismissal is not appropriate unless it clearly appears that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *See also CCAIR,* 29 F.3d at 859 (citing *D.P Enterprises, Inc. v. Bucks County Community College,* 725 F.2d 943, 944 (3d Cir.1984)). A complaint may be dismissed when the facts plead and the reasonable inferences drawn therefrom are legally insufficient to support the relief sought. *See Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.,* 836 F.2d 173, 179 (3d Cir.1988). Moreover, in deciding a motion to dismiss under Rule 12(b)(6), the district court "is not required to accept legal conclusions either alleged or inferred from the pleaded facts." *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993).

34. To prevail on his retaliation claims under § 1983 in Counts 1 & 2, Judge Avellino is required to prove three things: (1) first, that he was engaged in protected activity; (2) second, that the defendants responded with retaliation; and (3) third, that his protected activity was a substantial cause or motivating factor for the alleged retaliatory action. *See e.g., Anderson v. Davila,* 125 F.3d 148, 161; *Feldman v. Philadelphia Housing Authority,* 43 F.3d 823, 829 (3d Cir.1994) (citing *Mt. Healthy,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471).

35. As to Judge Herron, the Court cannot conclude that under no set of facts is Judge Avellino able to establish the First Amendment retaliation claims asserted in Counts 1 & 2 of the amended complaint. Accordingly, the Court will deny the motion to dismiss Counts 1 & 2 as to Judge Herron.

36. As to Judge Bonavitacola, the Court will grant the motion to dismiss Counts 1 & 2. To hold Judge Bonavitacola

liable under § 1983 for the alleged violations, Judge Avellino must show that Judge Bonavitacola " 'participated in violating [his] rights, ... or that [he] directed others to violate them, or that [he] had knowledge of and acquiesced in [his] subordinates' violations.' " *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1293 (3d Cir.1997) (quoting *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir.1995).

37. Judge Avellino nowhere alleges that Judge Bonavitacola had any authority to order his reassignment or that of his tipstaff. In fact, under the 1986 Directive, which the defendants attached in part to their motion, and under the Supreme Court of Pennsylvania's pronouncements in *Blake*, it is clear that the Supreme Court of Pennsylvania has vested the authority to make judicial assignments in the First Judicial District on the administrative judge, and that of assignment of personal staff on the individual judge, and not on the president judge. *See* Directive, 509 Pa. at XLI–XLII, para. 3(A) & (B). Nor is Judge Bonavitacola's participation along with Judge Herron in the filing of the show cause petition in the Supreme Court of Pennsylvania actionable under § 1983. Merely alleging that Judge Bonavitacola brought Judge Avellino's failure to report to his assignment of presiding over felony waiver proceedings to the attention of the Supreme Court of Pennsylvania does not state a claim under § 1983. Therefore, the Court concludes that under no set of facts can Judge Avellino establish his First Amendment retaliation claims under Counts 1 & 2 against Judge Bonavitacola. Accordingly, the Court will grant the motion to dismiss Counts 1 & 2 as to Judge Bonavitacola.

38. Count 3 of the amended complaint seeks attorney's fees. A claim for attorney's fees does not state a cause of action. The Court will dismiss the Count since it should be part of the prayer for relief, not pleaded as a separate count.

**AND IT IS SO ORDERED.**